[Opinion delivered March 6, 1882.]

---

### JOHN G. BELL ET AL. v. S. SCHWARZ.

#### (Case No. 455.)

1. HOMESTEAD.— On the death of the wife her interest in the homestead descends and vests in her heirs, subject to administration and to the right of the husband to wind up the community affairs. This right of the husband must be limited chiefly to paying the community debts, and a purchaser from him does not acquire the interest of the children of the marriage when there were no debts of the community to be paid. A sale to support the children will not be sufficient to pass title to their interest in the homestead.

APPEAL from Austin. Tried below before the Hon. Livingston Lindsay.

This was an action of trespass to try title, commenced June 26, 1871. The plaintiffs were John G. Bell, guardian of the minors Daniel and Theodore Cross, and William S. Wright, guardian of the minor Mary Cross. These minors were the children of Lucy and Horace Cross, deceased. Lucy died in September, 1867, and Horace in December, 1869.

The land in dispute consisted of several lots in the town of Hempstead, and were the homestead of Lucy and Horace Cross.

September 1, 1869, the father conveyed this property to appellee by deed with general warranty. He acquired no other homestead. This property was the community property of the husband and wife, and this suit was brought to recover the half interest inherited by the minors from their mother.

March 29, 1872, a trial was had and judgment was rendered for defendant, which on appeal was reversed and the cause remanded. A report of the case will be found in 37 Tex., 572.

In the progress of the cause the minor Mary intermarried with A. J. Fagan, who made himself a party plaintiff. It appears from the record that appellee knew of the condition of the property when he bought; that the price paid for it was $600; that it was worth $1,000 or $1,200 — though one witness testified that when it was sold times were hard, money very scarce; that it was doubtful whether the place would have sold for more than appellee paid for it, and that the rental value of the property was from $10 to $15 per month. There was no proof of community debts; but it appears that in the year 1869 Horace Cross sold a stock of cattle for $500 or $600, and that the money was paid, part of it at the time of the sale, part afterwards. Among other defenses set up by appellee was this: that after his purchase of the land, he had at the request of Horace Cross paid certain tuition bills for the benefit of the minor Mary, and some accounts for clothing furnished, these amounting to $60 or $70; that he had at the request of Horace Cross paid two installments of the premium upon a life policy, which Cross had taken out upon his life for the benefit of the minors Daniel and Theodore; that the guardian of these minors had received the money ($2,500) upon that policy

after the death of their father; and that thus having been amply provided for by their father, they were estopped from claiming anything in this suit. Appellants objected to the proof of these facts when offered, but the objection was overruled and appellants excepted. The trial was had March 10, 1874. Verdict and judgment for defendant.

*Hunt & Holland*, for appellant.

*Ben T. Harris & Kleberg*, for appellee.

DELANY, J. COM. APP.—The assignments of error in this case relate to the admission of evidence over the objections of appellants, of the charge of the court, the refusal of charges asked by appellants, and the overruling of the motion for a new trial. The property had been the homestead of the parents and of the appellants in this cause, and we are to consider: *First*, whether the surviving father had the legal right to convey to appellee? *Second*, are the appellants estopped to deny his title?

It has long been settled in this state that the interests of the husband and wife in the community are equal — the husband having the right of control and disposition during the marriage, except in the case of the homestead. Upon the death of the wife her interest passes by operation of law to her heirs, subject to administration and to the right of the husband " to wind up the community affairs." Veramendi *v.* Hutchins, 48 Tex., 550, and authorites cited; Johnson *v.* Harrison, id., 257 Pasch. Dig., 4642.

These cases speak of the right of the husband to wind up the affairs of the community. This winding up must consist chiefly, if not entirely, in paying the community debts; for the statutes expressly provide that, after the payment of the community debts, one-half of the re-

mainder of the property shall pass to the heirs of the deceased. Their right to their part of the property is a legal right, just as complete as is the father's right to his; just as complete, so far as he is concerned, as if they had derived their title from a stranger. Johnson *v.* Harrison, *supra.*

If, then, aside from his right to wind up the community affairs, and aside from these statutory regulations which empower him to sell upon certain conditions — if, in addition to these, he has some further power to sell the land of his children, it must be simply because he is their father and natural guardian. Let us suppose a case like the one put by Justice Bell in Thompson *v.* Cragg (24 Tex.), that Lucy Cross at the time of her marriage with Horace Cross had been a widow and the mother of a son, the child of a former marriage. This son would have inherited a part of this property. Could Horace Cross have conveyed the interest of this step-son to appellee? We think not. All the authorities agree that he may sell for the purpose of paying community debts; but can he sell for any other purpose? In the case of Johnson *v.* Harrison, quoted above, the court presents the case thus: "His" (the surviving husband's) "power to sell is dependent on the existence of some claim against the community, and whoever purchases from him must see to it that the facts exist which authorize the sale." As there were no community debts, this seems to dispose of that part of the case.

The court instructed the jury that if the father "sold the property for the purpose of making a suitable provision for the children, and did so make provision for them, for an amount and to an extent beyond the value of one-half of said homestead, the plaintiffs in that case are not entitled to recover in this action." Whatever may be said of this charge as an abstract proposition, it was not applicable to the case made by the proof. There is

nothing to show what induced the father to sell. It only appears that he sold the property for $600, and about the same time a stock of cattle for nearly the same amount. What he did with the money does not appear. His sons were under ten years of age, the daughter not yet sixteen; and it is certain that only a very small part of this fund was used for their benefit. The only provision made for the daughter did not exceed seventy dollars, paid for clothing and tailors' bills. These expenses were incurred before the sale of the property. It was the father's duty to support his child; and her estate was not liable for these debts. The expenditures for the minors Daniel and Theodore were small indeed. A few articles of clothing furnished and the quarterly installments upon the premiums of a life policy — these are all that the record shows.

In Thompson v. Cragg, 24 Tex., 597, the court say: "This court has never gone so far as to decide that the surviving father or mother could sell that portion of the community which vested in the heirs of the deceased partner for the support of the family; and to uphold sales upon such grounds would be to withdraw the most important rights from the control of those tribunals authorized by law to guard and protect them, and to commit them to the capricious inclinations of individuals."

Appellants objected to the proof of these facts when it was offered, and it should have been excluded. Thompson v. Cragg, supra.

We do not think that the heirs are estopped by anything that appears in the record. They received nothing from their father's estate. The proceeds of the life policy formed no part of his estate, and its receipt by the sons does not estop them in any way whatever.

It is a general rule that infants and married women are not estopped unless their conduct has been intentional and fraudulent. Wright v. Doherty, 50 Tex., 41; Bige-

low on Estoppels, pp. 486–88; see also Yancy v. Batte, 48 Tex., 59; The State v. Lewellyn, 25 Tex., 797. Our conclusion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 7, 1882.]