ST. LOUIS BREWING ASSOCIATION v. JOHN C. WALKER, ADMINISTRATOR, ET AL.

Decided December 4, 1899.

1. **Continuance—Diligence.**

Plaintiff's application for a continuance was properly overruled where it disclosed that he had been notified more than two months before the trial that defendants would press a trial, and no diligence was shown to prepare for trial of the issue to which the motion was directed.

2. **Same—Harmless Error.**

Error in overruling plaintiff's application for a continuance is harmless where the issue to which it related was found in plaintiff's favor at the trial.

3. **Homestead—Change of—Fraud Upon Wife.**

Where, during and after a temporary removal of the family from the homestead, the husband secretly determined to make the new place of residence the future homestead, executing a mortgage on the old homestead to one whose agent in the matter knew of the secret nature of his intention to change the homestead and who aided in concealing such intention from the wife, the attempted change was not binding on her, and the mortgage created no lien.

4. **Same—Fact Case.**

For facts so clearly showing there was no abandonment or change of the homestead as not to require a submission of that issue to the jury, see the opinion.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Geo. E. Mann* and *Lovejoy, Sampson & Malevinsky,* for appellant.

*Maco & Clegg Stewart,* for appellees.

GILL, ASSOCIATE JUSTICE.—This suit was instituted by plaintiff in error, the St. Louis Brewing Association, against John C. Walker, administrator of the estate of Charles Dalian, deceased, to recover against said estate upon a promissory note for $10,000, executed by decedent, and to enforce a deed of trust, given to secure same, against lot 9, of block 564, of the city of Galveston, the administrator having disallowed the lien. For this last purpose the widow and children of Dalian were made parties defendant in order that their rights might be precluded.

John C. Walker answered as administrator with will annexed, raising certain issues not necessary to be noticed in the disposition of this appeal. The children of Dalian disclaimed, and were dismissed upon their disclaimer, Dalian having willed the property to his widow and it having been set aside to her as a homestead by the probate court. Augusta B. Dalian, the widow of the deceased, answered that the real estate upon which the lien was sought to be foreclosed was the residence homestead of Charles Dalian at the date of the execution of the trust deed, and remained so until the date of his death.

Trial was had on February 17, 1899, resulting in a verdict for the brewing association for the amount due upon the notes, but finding in favor of Mrs. Dalian, the surviving widow, on the homestead issue. Judgment was rendered accordingly, and the case is before this court upon writ of error.

The refusal of the trial court to grant a continuance on motion of plaintiffs in error is assigned as error. We are of opinion that the motion itself was without merit. It disclosed the fact that plaintiff in error had been notified more than two months before the trial that defendants would press a trial, and no diligence is shown to prepare for trial of the issue to which the motion was directed. If this were not true the error is rendered harmless by the fact that the jury found in favor of plaintiff in error upon the issue in question, and they procured judgment against the estate of Dalian for the amount of the note sued on.

The contention of plaintiffs in error is, that before the execution of the deed of trust Dalian, who was the head of a family, had acquired a residence homestead upon a different piece of property. That at the date of the deed of trust lot 9, the one in controversy, known as the Market Street property, was only the business homestead, and at the date of the acquisition of the alleged new residence homestead the combined value of the two exceeded in value $5000, and that therefore the deed of trust is valid as against the excess in value over $5000 chargeable against the Market Street property. The contention that in such a case the acquisition of the residence homestead, leaving the old clothed only with the character of a business homestead, is a new homestead designation, and if at such date the combined value of the two exceeds $5000 for the unimproved lots, the excess is subject to execution, is believed to be sound, and is indirectly sustained by Texas

authority. Richards v. Nelins, 38 Texas, 446; Lake v. Boulman, 12 Texas Civ. App., 661.

This being true, if the evidence presented the issue thus sought to be raised, the judgment can not stand, for the trial court refused to present the issue for the determination of the jury. This necessitates a consideration of the facts bearing upon this phase of the case. Charles Dalian and Augusta Dalian were married in 1868. In 1873 they acquired lot 9, in block 564, of the city of Galveston. After fitting same for both residence and business homestead they moved upon same and resided thereon until some time in the year 1893, Charles Dalian, who was a wholesale and retail dealer in liquors, conducting his business in the lower story. Their children were born and reared in that house, and they never at any time lived elsewhere until the date last named. For years prior to 1893 Charles Dalian was a confirmed inebriate, and his health finally became so seriously impaired, as a result of his habits of intemperance, that his physician advised his wife to induce him to move to his beach property in the hope that the new situation and surroundings would benefit him. This he finally did, and he and his family resided on the beach property for nearly a year. They carried with them to their new abode only a part of their furniture, leaving much of it at the old place, as well as trunks and family pictures. They rented out the front part of the house, leaving a relative in charge of the family rooms not rented. This rental is conclusively shown to have been temporary. The business was conducted in the lower story as before. Some time prior to the move to the beach, Dalian had purchased the old "Willis house," divided it into three parts, and moved it on his beach lots for the purpose of renting them for the use of others. The purchase money for the beach lots had not been discharged in full at the time of his death. The Market Street property was unincumbered at the date of removal to the beach. The house into which he moved was not finished, some of the rooms not being prepared for occupancy. The bathroom plumbing was not done, and some of the doors were not hung, and this condition continued until they returned to the old home. A carpenter was employed to construct a china closet and was not permitted to build it as a part of the house, but was required to build a movable one constructed with reference to measurements of the Market Street property, and of such size as made it possible to be carried up the stairway of the old place. No carpets were tacked down in the new place, but simply spread upon the floors. No pictures were hung, the only picture taken to the new place being one of Dalian, which was placed upon the piano. Dalian continued to conduct the business on the Market Street property, and his wife visited the place each day. They refused to plant vines and shrubbery at the new place, on the ground that such things would fall to the use of parties to whom the place would be subsequently rented.

The advice of the physician, which resulted in the move, was shown by the physician himself, and repeated and continuous declarations both

of Dalian and wife showing the motives for the change and the intention to return were established by a great number of witnesses. The family did in fact return to the old home in the fall of 1894 and Charles Dalian died there. To all this evidence, both of declarations as to intention and acts accompanying them, there is .not a scintilla of opposing proof. Appellant contends, however, that the declaration in the deed of trust raises this issue sufficiently to require its submission. The declaration is as follows: "And I, Charles Dalian, hereby expressly renounce and disclaim any and all homestead rights in said property, and I do hereby bind myself, my heirs, and personal representatives, that I will warrant the same free from all homestead claim by myself or anyone else."

This deed of trust was executed on February 6, 1894, when Dalian had been living on the beach property about six months, and given largely to secure an antecedent debt. John C. Walker, Dalian's attorney at the time, was requested by Rooke, the agent of appellants, to draw this deed of trust. He suggested the homestead character of the property, but was given to understand by Rooke that he needed no advice, as he had a lawyer of his own. Thereupon Walker drew the instrument containing the name and providing for the signature of Mrs. Dalian, but the instrument as thus drawn was rejected and he was required to draw another omitting the name of Mrs. Dalian. The entire transaction was studiously concealed from Mrs. Dalian and she subsequently learned of it only through the insurance agent who was authorized to transfer the fire insurance policies to appellant. It is shown beyond question that it was the purpose both of Rooke and Dalian to keep the transaction from Mrs. Dalian. It is also shown that Dalian's mental condition during all this time was such as to make the validity of Dalian's contract very questionable. These circumstances attending the execution of the deed. of trust are also undisputed.

The Market Street property is shown to have been worth at date of acquisition less than $5000, and at date of trust deed about $12,000, and the three and one-half beach lots about $2500, incumbered by a vendor's lien.

Appellant insists that it is immaterial what the intention was at the date of removal to the beach, if Charles Dalian subsequently, and prior to the execution of the trust deed, conceived the purpose to abandon the Market Street property as a residence homestead and acquire another on the beach, and that the independent purpose of Charles Dalian, as head of the family, would control. This is undoubtedly true if the purpose of the husband was formed in good faith and not in fraud of the wife. Wynne v. Hudson, 66 Texas, 11. But it is equally clear that a secret purpose formed on the part of the husband, after the temporary nature of the removal from the old home had been fixed and understood, would not bind the wife, and especially is this true in a case like the one under consideration where the secret nature of the purpose, if any was formed at all, was known to the appellant, and his

agent joined in the effort to conceal it from the wife. Not only is this true, but the nature of the declaration in the trust deed is inconsistent with the admitted fact that the property remained a business homestead, and fails to declare that it has ceased to be one for residence purposes, and that Dalian has acquired another. In one sense it assumes that at the date of the instrument it possesses the homestead character, and undertakes to renounce the right to assert the claim. If the declaration taken alone was evidence of Dalian's intention to abandon the Market Street place, its force is utterly destroyed by the undisputed facts attending its execution.

We are of opinion that the evidence fails to raise the issue upon which the assignment is predicated, consequently the other errors, if any, become immaterial.

The ordinary mind could come to but one conclusion in view of the undisputed facts, and the jury could have properly rendered no other verdict. The judgment is affirmed.

*Affirmed.*

Writ of error refused by the Supreme Court.