PARKER et al. v. SCHRIMSHER et al.
(No. 537.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 31, 1914. On Motion for Rehearing, Dec. 19, 1914.)

1. HOMESTEAD (§ 12*)—RIGHT OF WIFE IN HOMESTEAD—"VESTED RIGHT."

A wife's right in the homestead is a "vested right" in the land itself, of which she cannot be deprived, except as pointed out by the Constitution and statutes.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 12, 13; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, First and Second Series, Vested Right.]

2. HOMESTEAD (§ 118*)—HOMESTEAD—CONVEYANCES BY HUSBAND—RIGHTS OF WIFE.

A covenant in a mortgage executed by a husband alone that the premises are not the homestead does not bind the wife, where the premises are the homestead, unless she made representations deceiving the mortgagee.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 192, 195, 203–209, 216, 217; Dec. Dig. § 118.*]

3. HOMESTEAD (§ 118*)—RENUNCIATION—EFFECT ON WIFE.

Where, during a temporary removal from the homestead, a husband secretly renounces the same in a deed of trust thereon, the renunciation is not binding on the wife.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 192, 195, 203–209, 216, 217; Dec. Dig. § 118.*]

4. HOMESTEAD (§ 169*)—ABANDONMENT—EFFECT.

The act of a husband in abandoning in good faith the homestead deprives it of the constitutional protection of a homestead, but where the abandonment is in fraud of the rights of the wife and to evade the Constitution, prohibiting the giving of liens on the homestead, the property continues a homestead, and an attempted lien is void.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 335; Dec. Dig. § 169.*]

5. HUSBAND AND WIFE (§ 62*) — PROPERTY RIGHTS OF MARRIED WOMEN—ESTOPPEL.

A married woman is not estopped, unless her conduct has been intentional and, in contemplation of law, fraudulent.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 282–284, 363; Dec. Dig. § 62.*]

6. HOMESTEAD (§ 56*) — ABANDONMENT — ACQUISITION OF OTHER HOMESTEAD — "ACQUIRE."

A husband, to acquire a new homestead, so as to enable him to convey or mortgage the old homestead as abandoned, need not purchase other land for a new homestead, but it may be acquired in land owned by the husband at the time of the abandonment; for the word "acquire" means something vested or inherent in the subject, and a mere temporary possession is not expressed by the word.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 81, 82; Dec. Dig. § 56.*

For other definitions, see Words and Phrases, First and Second Series, Acquire.]

7. HOMESTEAD (§ 162*)—ABANDONMENT—ACTS CONSTITUTING.

Where a husband and wife left real estate constituting their homestead without intent to abandon it, but intending to return and continue to occupy it as their home, it remained their homestead, though they moved temporarily on other land owned by him, and a mortgage giv-

en by the husband during the temporary absence is void.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 315–319; Dec. Dig. § 162.*]

8. HOMESTEAD (§ 122*)—INCUMBRANCES—ESTOPPEL.

Where, during a temporary absence by a husband and wife from their homestead, the husband executed a mortgage reciting that the property was not the homestead, the wife was not bound thereby, unless she induced the mortgagee to accept the mortgage and believe at the time that the property was not a homestead, and her act to estop her must have been intentional and equivalent to fraud on the mortgagee.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 220–222; Dec. Dig. § 122.*]

9. HOMESTEAD (§ 164*)—"ABANDONMENT"—NEW HOMESTEAD.

The occupation by a husband and wife of a new homestead must, to constitute an abandonment of the old homestead, be with the intention of permanently residing thereon and making it the family home, and the act and intent must be concurrent, and, until a new homestead is acquired or the old one abandoned in good faith by the husband, the wife retains a vested right in the old homestead, notwithstanding any representations of the husband to his creditors to the contrary.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 327, 328; Dec. Dig. § 164.*

For other definitions, see Words and Phrases, First and Second Series, Abandon.]

10. CANCELLATION OF INSTRUMENTS (§ 37*)—FRAUD—PLEADING.

A general allegation that a mortgagor did not read the instrument, but relied on his friendship and business relations with the mortgagee, who prepared the instrument, and that he did not know that the mortgage recited that the property conveyed was not homestead, does not allege fraud under the rule that, to present the issue of fraud, the facts constituting it must be alleged.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37.*]

11. CONTRACTS (§ 94*)—FRAUD—ACTS CONSTITUTING.

The mere fact that one party drew up a contract containing certain stipulations which the other party did not know were in it does not justify the setting aside of the contract, unless by some conduct acceptance of the instrument without ascertaining its contents was induced.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. § 94.*]

12. HOMESTEAD (§ 118*)—MORTGAGES—RECITALS—EFFECT.

A recital in a mortgage executed by a husband alone that the property mortgaged is not a homestead is admissible as a declaration made by him against his own interest, which must be weighed as any other fact in determining the character of the property, though the homestead rights of the wife are unaffected thereby, and though she may show the falsity of the recital.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 192, 195, 203–209, 216, 217; Dec. Dig. § 118.*]

13. JURY (§ 131*)—EXAMINATION OF JURORS—HYPOTHETICAL QUESTIONS.

On the issue of whether property, not occupied by a husband and his family at the time he executed a mortgage thereon, was his homestead, a question, asked jurors as to their qualifications, whether the fact that the husband exe-

cuted the mortgage would influence them in determining whether the property was a homestead at the time of the making of the mortgage, was erroneous, as requiring each juror in advance to declare what effect they would give to the testimony, including the recital in the mortgage that the property was not a homestead.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 561–582; Dec. Dig. § 131.*]

14. HOMESTEAD (§ 181*)—INTENT TO ABANDON—SELF-SERVING DECLARATIONS.

A declaration by a husband, who, with his family, left the homestead and occupied another place, that he intended to move back was self-serving on the issue of whether there was an abandonment of the homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 351–353; Dec. Dig. § 181.*]

15. WITNESSES (§ 389*) — IMPEACHMENT — PROOF OF CONTRADICTORY STATEMENTS.

A witness who admits that he had made a contradictory statement while testifying on a former trial may not be impeached by introducing the former statement, especially where the witness on the former trial corrected his testimony so that it substantially conformed to his testimony on the second trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1243–1245; Dec. Dig. § 389.*]

On Motion for Rehearing.

16. HOMESTEAD (§ 181*)—ABANDONMENT—EVIDENCE—ADMISSIBILITY.

On the issue of abandonment of a homestead by moving to another place, the owner may testify as to his intention to return to the property.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 351–353; Dec. Dig. § 181.*]

17. EVIDENCE (§ 311*)—DECLARATIONS—RES GESTÆ.

Where, on the issue of the abandonment of a homestead by the owner's removal, it appeared that his declarations made to third persons were within the rule of res gestæ, the third persons should be produced to prove them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1163, 1164; Dec. Dig. § 311.*]

18. EVIDENCE (§ 385*) — PAROL EVIDENCE — CONTRADICTING WRITTEN INSTRUMENT.

Parol testimony is inadmissible to vary a written instrument, in the absence of fraud inducing the execution of the instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1757, 1758; Dec. Dig. § 385.*]

19. EVIDENCE (§ 395*)—CONVEYANCES—VALIDITY—EVIDENCE.

A husband and wife, relying on the invalidity of a mortgage by the husband alone, on the ground that the property covered thereby was their homestead, may not, in the absence of proof of fraud, show that he did not know that the mortgage recited that the property was not a homestead.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1746–1753; Dec. Dig. § 395.*]

20. HOMESTEAD (§ 122*)—MORTGAGES—ESTOPPEL.

A husband and wife, representing that property mortgaged by the husband alone was not homestead are estopped to assert the contrary, where the mortgagee, on the faith of the mortgage, extended additional credit, and where he was induced to refrain from looking to other property of the husband in satisfaction of the debt.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 220–222; Dec. Dig. § 122.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

21. WITNESSES (§ 388*) — IMPEACHMENT — PROOF OF CONTRADICTORY STATEMENTS — PREDICATE.

To impeach a witness by proof of contradictory statements, it is necessary to call the attention of the witness to the statements to enable him to explain them.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1233–1242, 1246; Dec. Dig. § 388.*]

22. TRESPASS TO TRY TITLE (§ 35*)—ISSUES—EVIDENCE.

A defendant in trespass to try title may, under pleas of the general denial, not guilty, and a special defense, prove any fact in rebuttal of plaintiff's testimony, but cannot introduce evidence in confession and avoidance, except as specially pleaded.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

23. HOMESTEAD (§ 213*)—PLEADINGS—ISSUES.

In trespass to try title on the theory of the invalidity of a mortgage by a husband alone covering homestead, a general denial puts in issue every fact necessary to establish a homestead at the time of the execution of the mortgage, and the proof which may be introduced to establish any such fact may be combatted by proof of abandonment on the acquisition of a new homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 394–396; Dec. Dig. § 213.*]

24. HOMESTEAD (§ 214*)—EVIDENCE.

Proof that plaintiffs in trespass to try title resided on the premises established, at most, only a prima facie case as against defendant relying on a mortgage executed by the husband alone, and evidence rebutting the presumption is admissible under the general denial.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 397–399; Dec. Dig. § 214.*]

25. EVIDENCE (§ 121*)—DECLARATIONS—RES GESTÆ.

The testimony of a wife that when land mortgaged by the husband alone was purchased he told her that the same would be used as a home, and that when they left the premises he stated that they would return as soon as she was able, was admissible as a part of the res gestæ and as explanatory of the cause of removal on the issue of abandonment of the homestead.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. § 121.*]

26. HOMESTEAD (§ 110*) — ESTABLISHMENT — ABANDONMENT.

A husband, though entitled to select the home, may not defeat a home established and vested until, in good faith, he selects another, or in good faith abandons the old one.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 176; Dec. Dig. § 110.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by Con Schrimsher and another against the Western National Bank of Hereford, G. A. F. Parker, and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

F. T. Roloson and Knight & Slaton, all of Hereford, for appellants. Carl Gilliland, of Hereford, for appellees.

HUFF, C. J. This suit was instituted by C. Schrimsher and Mattie Schrimsher against the Western National Bank of Hereford, G. A. F. Parker, and L. McBride for two lots in the town of Hereford.

The first count is an ordinary action of trespass to try title, and the second count sets up substantially that the Western National Bank is claiming some interest in and to the premises by virtue of two deeds of trust and sales thereunder. The first deed of trust is dated January 4, 1908, executed by C. Schrimsher, and the other deed is dated June 1, 1910, to A. J. Lipscomb, trustee, alleging that the deeds of trust were void at the time of their execution, for the reason that the lots were then the homestead of C. Schrimsher and his wife, asking to cancel the deeds of trust as a cloud.

The appellants answered by general denial and a plea of not guilty and by a plea in estoppel, setting up that C. Schrimsher, at the time of the making of the deeds of trust, was not actually residing upon the lots in question, and that the bank relied upon the statement contained in the deeds of trust to the effect that the property conveyed therein was not the homestead of the plaintiff and had never been; that the deed of trust was given to secure two notes, dated January 1, 1908, one for the sum of $2,542.25, and the other for the sum of $376.75; that these two notes were, in fact, executed on the same day the deed of trust was executed, but, as a matter of convenience, they were dated back to January 1st, instead of on the 4th—and alleging that the larger of the two notes was made up of two notes then owing by Schrimsher to the bank, and were added together, and made into one note, and that the smaller note for $376.75 was for money advanced to him at that time upon the security given on the lots by the deed of trust, and that the second deed of trust was given to secure the note for $250, which note was in part for an antecedent debt and part for money then advanced and paid to and for the benefit of Schrimsher. The plaintiff answered by a supplemental petition that, if the deeds of trust set out and described in the answer contained the clause that Schrimsher had never occupied the property in controversy as a homestead, that said property was not at the time of the execution of the deeds of trust plaintiff's homestead, then that appellants knew that such statements were not true, and did not rely thereon, and that Schrimsher did not know that said statements were in the deeds of trust when he so executed them. He alleged that he did not read the deeds of trust or either of them prior to or at the time he signed and delivered them, and was not advised that either of them contained the homestead clause as above set out, and did not learn of the same until long thereafter; that he told G. A. F. Parker, who was the president of appellant bank, that he was willing to execute deeds of trust conveying

the property for the purpose of securing the payment of the notes described in the deed of trust; that Parker thereupon prepared the deeds of trust, and, without the knowledge or consent of Schrimsher, placed therein the declarations and statements that said property had never been, and did not constitute, the plaintiff's homestead; and that Parker then asked him to sign and acknowledge the same, and, believing that the instruments were only deeds of trust and contained only such provisions as are necessary to constitute a deed of trust, and that it had been drawn in accordance with Schrimsher's agreement and statements, he, without reading or having said deeds of trust read to him, signed, acknowledged, and delivered them to Parker for the bank, but would not have done so had he known they contained said renunciation. He further alleges that he had known Parker a great many years, and that they had been close friends, and that he had been doing all of his banking business with Parker and advising with Parker for some years, and that at the time of the execution of the deeds of trust he had implicit confidence in Parker, and relied on him to take no advantage of him in the preparation of said deeds of trust.

The appellants have briefed 68 assignments of error in their presentation of this case. It would serve no useful purpose to notice each assignment as presented, and to do so would lengthen the opinion unnecessarily. One of the important questions in the case is that of estoppel. As we understand, appellants contend that the appellees are estopped from setting up homestead rights in and to the property in controversy by reason of the two deeds of trust executed by the husband, Con Schrimsher, to secure the Western National Bank; one dated January 4, 1908, to secure two notes, one for $2,542.25, and the other $376.75, both notes bearing date January 1, 1908; the other deed of trust executed June 10, 1910, to secure a note for $250. Each deed of trust contains the clause that the property was not then, and had never been, his (Con Schrimsher's) homestead. Without going into the testimony at any great length, the facts show that appellee C. Schrimsher bought what is designated in the record as the Jackson place in 1906, and occupied it with his family until the 1st day of January thereafter. He then moved his family upon the property in controversy, where he resided with them, running a restaurant and rooming house thereon, and used it as a home for himself and family until in August, 1907, when his wife was taken sick with typhoid fever, and they then removed upon the Jackson place and continued to live there until he traded that place for what is known in the record as the Garland place in the fall of 1908. While living on the Jackson place with his family he executed the first deed of trust, dated January 4, 1908. The prop-

erty sued for was at that time rented by appellees and occupied by their tenant. There is some conflict of evidence as to whether appellees were residing on the property in controversy or on the Garland property at the time of the execution of the second deed of trust June 10, 1910. The jury resolved this question in favor of the appellees. Mrs. Schrimsher was the wife of Con Schrimsher at all the times mentioned and lived with him as his wife. They had a large family of children, who lived with them on the several places. Both of the appellees testified that the property in controversy was acquired for a homestead for themselves and family, and that it was their intention to make their home thereon, and that they used and occupied it as such; that in leaving the place it was not their intention to abandon it as a homestead, but they had the intention to return to it and occupy it as a home; that they only left it temporarily, with no intention to permanently abandon it as a home. They rented it by the month, and left it in the first place because of Mrs. Schrimsher's health. The facts also disclose that several members of the family were taken down with fever after the mother and wife, and after this they were quarantined on account of smallpox. We find no evidence in the record showing that Mrs. Schrimsher signed the deeds of trust or was consulted about them, or that she knew anything about them, or that her husband had executed the deeds on the lots.

[1] The wife's right in the homestead is not merely a possessory right or only a right to occupy the premises, but it is a property right, a vested right in the land itself. Huss v. Wells, 17 Tex. Civ. App. 195, 44 S. W. 33; Stallings v. Hullum, 89 Tex. 434, 35 S. W. 2. She cannot be deprived of it except as pointed out by the Constitution and the statutes. So long as it is the homestead and occupied as such, it cannot be incumbered by the husband, with or without her consent, except in certain instances specified by the Constitution. Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12.

[2] The covenant in a mortgage made by the husband that the premises are not the homestead does not bind the wife, unless connected with representations made by her which deceived the mortgagee. Thomas v. Williams, 50 Tex. 269; Armstrong v. Moore, 59 Tex. 648; Eckhardt v. Schelecht, 29 Tex. 129. There appears to be a uniformity of authority that the fraudulent acts of the husband in which the wife does not participate will not deprive her of her homestead rights. Texas Land, etc., Co. v. Cooper, 67 S. W. 173, and authorities there cited.

[3] If, during a temporary removal from the homestead, the husband secretly renounces the old homestead in a deed of trust thereon, such renunciation does not bind the wife. St. Louis Brewing Ass'n v. Walker, 23 Tex. Civ. App. 6, 54 S. W. 360. In the case just

cited it appears the agent of the mortgagee knew of the secret intention of the husband, but the decision of the court does not appear to have been based upon that fact. "There can, in law, be no abandonment of the homestead in which the wife does not join, any more than there can be an alienation of the same by the husband without the consent of the wife." Hudgings v. Thompson, 163 S. W. 659. The above quotation must be read in connection with the facts of that case. The husband, while living on the land, contracted to convey the homestead, and at that time he and his wife removed from the land, but it appears the wife was ignorant of the contract. After removing from the land the husband and wife joined in a conveyance of the land to another party, and shortly thereafter acquired another home.

[4] If the husband abandons the homestead in good faith, such act would deprive it of the constitutional protection as a homestead; but, if done in fraud of the rights of the wife, to evade the provisions of the Constitution, which prohibits the giving of liens upon the homestead, then the property would continue homesteaded, and a lien attempted to be given upon it void. Medlenka v. Downing, 59 Tex. 32–40. "The mere declarations of the husband or of third parties, though ever so fraudulent, if false, do not bar or prevent the assertion of the homestead exemption by the husband and wife." Thomas v. Williams, 50 Tex. 269. In the case just cited the trust deed was executed alone by the husband, who represented at the time he obtained the money that the land was not the homestead, and that he resided with his family and had a homestead in Sulphur Springs. The evidence further shows that the husband and wife testified that, in fact, they had not abandoned the land as a homestead, but had gone to Sulphur Springs to send the children to school, where they were residing when the deed of trust was executed by the husband. The above case, upon the proposition stated, is cited with approval in the cases of Ross v. McGowen, 58 Tex. 603; Seay v. Fennell, 15 Tex. Civ. App. 261, 39 S. W. 181; Black v. Garner, 63 S. W. 918.

[5] It is a general rule that married women are not estopped unless their conduct has been intentional and, in contemplation of law, fraudulent. Bigelow on Estoppel (6th Ed.) § 621; Bell v. Schwarz, 56 Tex. 353; McLaren v. Jones, 89 Tex. 131, 33 S. W. 849.

[6] It is insisted, as we understand appellant, that as the husband made the deeds of trust on the lots, and recited therein that they were not at that time the homestead of the appellees, that the appellees would be estopped from setting up the homestead if, in fact, it had not been abandoned. It is true the husband has the right to select the home, and, if he in good faith has exercised that right, he would have the power to convey or incumber the old homestead. If he has acquired another homestead, then the power to convey and incumber the old homestead would be vested in him. We think also that, in order to acquire a new homestead, it is not necessary to purchase other land, but it may be acquired in land owned by the husband at the time of abandoning the old. The word "acquire," as used, means something vested or inherent in the subject. A mere temporary possession is not expressed by acquire.

[7] If, therefore, Schrimsher and wife left the property in question with no intent to abandon it, or did so temporarily, with the intent to return and continue it as their home, it would remain their home, even if for convenience they had moved temporarily on another tract of land; and if the facts warrant such a finding, a mortgage given by the husband during such temporary absence or residence on other property would be void.

[8] If the wife did not, by any declaration or act on her part, induce the appellant to accept a mortgage thereon, and to believe at the time it was not the homestead, then she would not be estopped. She must have intentionally so conducted herself that, in law, her conduct would be a fraud upon the appellant, and such facts must be so alleged and proven, in order to effect an estoppel, and, if the facts do not show such conduct on her part, then the only issue in the case is, Was the property the homestead? and, if so, was it abandoned, or had Schrimsher acquired another homestead at the time of the execution of the deeds of trust?

[9] The occupation of the new homestead must have been with the intention of permanently residing thereon and making it the home of the family. It must have been such an intent and act concurrent so that the homestead character attached to, and inhered in, the land so occupied. Until the new home was so acquired or the old one abandoned by the husband in good faith then the wife had a vested right in the old home, and the representation of the husband to his creditor to the contrary would be a fraud, not only upon the creditor, but also as to his wife, if he thereby sought to incumber it. We do not think, under such conditions, the husband and wife will be estopped from proving the actual fact as to the homestead.

The case of Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209, is similar to this case, in that the facts in each show the husband and wife to have been using two different places of residence, but are dissimilar, in that in the Hawes Case both husband and wife signed the disclaimer of homestead in the property in controversy, and designated the other property as their homestead. In this case the husband alone signed a disclaimer of the homestead in the property in question, and did not designate any other, unless his resi-

dence upon the Jackson place at the time was such designation. It is said in the Hawes Case, "We see no reason why the husband and wife, if not the husband alone," have not the right when the occasion arises, to make the selection. We believe that our holding in this case is in harmony with the Hawes Case, and is certainly supported by Thomas v. Williams, supra, and other authorities hereinbefore cited.

[10] We think the appellant's second, third, and fourth assignments should be sustained, which are to the effect that the allegations of the appellee's supplemental petition, which set out, in effect, that Schrimsher did not read the deed of trust, and that, owing to his long acquaintance, friendship, and business relations with Parker, who prepared the deed, he did not read over the clause contained in the deed of trust that the property was not then, and had never been, his homestead, and that he (Schrimsher) did not know it was in the deed, and that he would not have signed it had he known of such clause, and that Parker fraudulently inserted such clause, and it was not discovered by Schrimsher. A general allegation of fraud is not sufficient to present such issue, but the facts constituting the same must be alleged. We find no allegation of acts on the part of Parker from which fraud can be inferred. Parker v. Allen, 33 Tex. Civ. App. 206, 76 S. W. 74.

[11] The mere fact that one party drew up an instrument with a certain stipulation and the other party did not know that it was contained therein will not not set aside the instrument, unless some conduct on the part of the other induced him to accept it without ascertaining its contents. We do not think one can excuse himself from reading the instrument on the ground of his own negligence. Clack v. Wood, 14 Tex. Civ. App. 400, 37 S. W. 88; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 509. It has been repeatedly held, in cases where the declaration that the premises mortgaged was not the homestead, a party will not be relieved therefrom simply on the ground that he did not read it. The deed in this case was open to the inspection of Schrimsher, and he should have known of the statement. He cannot, we think, carelessly fail to examine the instrument and charge Parker with fraud without showing acts which Parker did that would prevent or excuse him from reading and knowing before he made it his deed. Moerlien v. Scottish, etc., 9 Tex. Civ. App. 415, 29 S. W. 948; Scotch, etc., v. Scripture, 40 S. W. 210; McGaughey v. American Bank, 41 Tex. Civ. App. 191, 92 S. W. 1003; Wright v. Bott, 163 S. W. 360; Pickett v. Gleed, 39 Tex. Civ. App. 71, 86 S. W. 946.

[12] We have concluded, if the facts show that the property was, in truth, the homestead at the time of the execution of the deeds of trust, and further show that Mrs. Schrimsher did not by her conduct estop herself, the declaration in the deed of trust would not estop appellees from showing the property was then, in fact, the homestead. This, however, does not exclude the statement as a fact or declaration made by Schrimsher against his own interest, which should be weighed as any other fact. It should stand as if he had actually made it; but the homestead rights of the wife will permit the proof of the falsity of the statement contained in the deeds of trust. We think the testimony of Schrimsher to the effect that he did not know the statements were in the instrument, that he did not make them, and that they were placed in the deed without his knowledge or consent, under the pleadings, should not have been admitted. The evidence is not sufficient to support the findings of the jury that the declaration that the property was not, and had not been, the homestead was not part of Schrimsher's deed, and were placed therein by Parker, without his knowledge or consent. The admission of the evidence under the pleadings was error.

[13] We think there was error, as set forth in the first assignment. In testing the jurors as to their qualification, counsel for appellees, over the objection of appellants, asked each juror the following question:

"If you were selected as a juror to try this cause, and an issue should develop on trial as to whether or not the property in controversy was a homestead at the time Con Schrimsher executed the mortgage or mortgages to the Western National Bank, and that issue was to be determined by you under the charge of the court, would you let the fact that Schrimsher executed the mortgage or mortgages to the bank influence you in determining whether or not the property in controversy was a homestead of himself and family at the time he executed the mortgage?"

The objection urged is that the question required each juror in advance to declare what effect they would give to the testimony which would be subsequently offered. That it was prejudging the effect to be given on a part of the evidence. Each juror answered the above question in the negative. The appellants exhausted their peremptory challenges allowed them by law, and the jury was composed of jurors so examined and who had so answered. At the time the deed of trust of January 4, 1908, was executed the appellees were not actually occupying the premises in question as a residence, but residing on another and different place. The question at issue was, then, the intention of Schrimsher in fixing his homestead. The appellant had no other way to show such intention, except by the acts and declarations of Schrimsher and the circumstances surrounding him. These facts, together with the deed, we think, the jury should have been free to consider without a previous pledge that they would not "let the fact that Schrimsher executed the mortgage or mortgages to the bank" influence them in determining whether the property was the homestead. Ellis v. State

(Cr. App.) 154 S. W. 1010. In the examination of a juror as to his qualification, there is large discretion vested in the trial court. The statement, however, that the jury would not let the mortgage influence them in finding a verdict on the homestead question is extending the rule, we think, too far. In the mortgage Schrimsher stated the property was not his homestead; yet each individual juror was forced to say this statement would not influence him in determining the question. Whether it was a homestead in this case rested alone in the mind of Schrimsher. The appellant had no way to show his intent with reference thereto, except by what he said and did. This error is a serious one. The charge of the court would not likely remove it. The jury had sworn, under the direction of the court, that the deed would not influence them. They doubtless would strive in considering the case that it should not, when they came to consider it upon the one vital issue in the case; that is, whether the property was a homestead. The courts have been quite liberal in the examination of jurors, but we can find no case which has gone to the extent presented in this one. Courts in some jurisdictions have condemned the practice of presenting hypothetical questions to a juror upon his voir dire.

[14] We think the sixth assignment should be sustained. The testimony of Schrimsher, to the effect that he told Ewing, his tenant, that he intended to move back to the place, we think, is self-serving and hearsay. He could testify as to what his intention was, but we do not think he should be permitted to testify to what he told others his intention was. This testimony is not shown to have been res gestæ, and it was brought out by appellant upon direct examination. Railway Co. v. Thompson, 75 Tex. 501, 12 S. W. 742; Moody v. Gardner, 42 Tex. 414; Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; Ry. Co. v. Culver, 168 S. W. 514.

[15] The twenty-sixth and thirty-second assignments of error are sustained. Parker and Black, while witnesses on the stand, were examined by appellee with reference to their testimony at a former trial of the court, in which they had testified to seeing a tenant on the property in controversy on June 10, 1910. It appears from their cross-examination that they each admitted to having made such statement, but before the former trial was closed they returned and corrected their testimony. On this trial, over the objections of appellant, the court permitted the court stenographer to read in evidence this testimony of the witnesses on the former trial with reference to having seen the tenant on the property at the date mentioned. This appears to have been done to contradict or impeach the witnesses. The rule, as we understand it, is that, when a witness admits he made a statement contrary to his testimony then given, such former statement cannot be introduced to impeach him. In this case they each testified substantially to the facts testified to by them on the former trial as it stood after the correction by them. Their statements on the former trial after correction then stood substantially as their statements on the present trial. We think under such facts it was prejudicial to introduce their testimony given on the former trial before it was corrected; especially so after they admitted they had so given it, but had corrected it. Such proceeding was calculated to injure the appellant, and induce the jury to disregard the testimony of the witnesses.

The other questions raised by assignments, many of them, are to questions propounded to witnesses because they were leading, to repeating testimony, and to the order in which the testimony was introduced. These questions are not likely to arise on another trial. Many assignments are based on the manner and form in which certain issues were submitted to the jury. These we do not think necessary to discuss, as they are not likely to be presented in the same way on another trial. We have tried to indicate what the issues are in this case, and, we take it, they will be properly submitted upon another trial.

The case will be reversed and remanded.

### On Motion for Rehearing.

[16] Both appellants and appellees file motion for rehearing. The appellees, in their motion for rehearing, assert error in the opinion of this court in holding as self-serving that which Con Schrimsher testified he told Ewing about his intention to move back on the property. Appellees say the testimony was res gestæ, but very frankly admit the statement contained in appellants' brief is incorrect, and does not properly show the record, and they might have added that by their brief filed in this court they nowhere in their statement assail the statement in appellant's brief. As it appeared to us from the statement, the evidence was clearly self-serving. If it was res gestæ, appellees could contend with some degree of plausibility that it was not objectionable. We held he could testify to his intention with reference to a return to the property. It, however, may be a very serious question, even as res gestæ whether he could tell Tom, Dick, and Harry that he intended to return to the property and occupy it as a homestead, and then, in order to prove such intention, take the stand and testify to what he told them. By that method he could prove his intention without being put to his oath on such intention, or without introducing the parties to whom he told it, giving himself the advantage of making the statement appear spontaneous and unpremeditated. It certainly ought to receive its setting from some other source;

at least a court would feel less hesitancy in receiving it.

[17] If he told others under such circumstances as will bring it within the rule of res gestæ, we think the witness to whom he made the statement should be produced. He takes this method of bolstering his testimony as to his intention by testifying to what he told others. From Cæsar he appeals to Cæsar.

[18] Appellees also are very insistent that our holdings that the appellees' plea of fraud, etc., as to the declaration contained in the deed with reference to his homestead did not authorize him to prove by parol that he did not, in fact, make such a deed. We did not hold this plea bad on the ground of estoppel, as appellees seem to think. We held it on the old rule that testimony cannot be introduced to vary or contradict a written instrument without sufficient and specific allegations of fraud, and the like. When a man reduces to writing his obligation and declaration, he is supposed to have done so with full knowledge of its contents. Under the rule as it is, the impeachment of written instruments is quite frequent enough. It has about come to pass as useless waste of time and paper to reduce an agreement to writing. In this case two witnesses swear Schrimsher knew of the clause in the deed, while he alone swears he did not, and the jury, in the exercise of their prerogative, accepted his statement.

[19] It is urged that this deed is void because on a homestead, and therefore it amounts, we presume, to no deed. That is assuming the very fact to be proven. Appellees, as a preliminary, to prove the fact sought, endeavored to get the deed out of the way as a fact showing the lots were not homesteaded. But appellees say the jury found that the property was the homestead. Doubtless the appellees persuaded the jury that Parker surreptitiously inserted the clause which thereby contributed in obtaining the verdict. In other words, Schrimsher negligently wrote in the deed this clause, or permitted it to be done, and then, on his negligence, pleads innocence, and stands as the victim of a cunning adversary, thereby getting all its force in favor of his homestead claims, which evidently aided in securing the verdict. Ordinarily the rules would permit a party to explain whether he made a statement or not, or why he made it; but there is another rule, where a party with all the solemnity of the law makes a deed containing such a declaration, he will not be heard to say he did not make it, unless he is induced thereto by fraud which disarmed him and prevented him from reading or knowing its contents. He cannot negligently close his eyes. They must have been plastered down by fraud. The latter rule, we think, should prevail in this case. One potent reason therefor is that the husband, as the head of the family, has the right to select and designate the home. Whether he has abandoned the old or acquired a new alone rested in his mind—especially so in this case. He occupied the Jackson place for a season, and then the lots in question, and again the Jackson place. How could a creditor know which was the homestead? We have gone, we think, as far as we ought when we permit appellees to prove the declaration in the deed was false. They ought not, under the pleadings, be permitted to say he did not make them in the face of his deed and prove that the declaration is that of his adversary. From this holding it must be apparent to appellees that we did not hold the plea bad and the evidence inadmissible on the ground of estoppel. We held the deed did not estop, if, in fact, no new home had been acquired, and if, in fact, the property was then the homestead, as the wife did not join in any such representation.

[20] At this point it may be well to notice appellees' position that there could be no estoppel, for the reason that Parker or the bank lost nothing; that the deed was given to secure a pre-existing debt. We did not notice this contention originally, because we did not think it important under our holding; neither do we think so now; but, as appellees seem to rest their rights, to some extent at least, by their argument on that question, we will express briefly our views: Conceding the facts show a pre-existing debt, which is not admitted by appellants, yet from this record it cannot be said the bank and Parker were not placed in a worse condition or injured by the declaration as to the homestead. The evidence indicates at the time the deed was executed the debt was extended and additional money obtained on the faith of the mortgage. As creditors, appellants had the right to look to the property of Schrimsher for the payment of the claim. If they had not been told the property in question was not the homestead, then they would have been entitled to go on or look to the Jackson property. Assuming the lots were the homestead, the representation that they were not enabled the appellee to hold the Jackson property out and to dispose of it, and, after it was disposed of, defeat the mortgage on the ground that it was given on the homestead, and therefore void. We cannot well conceive of circumstances which would put a creditor in a worse condition. Simkins on Equity, p. 672 et seq., Steffian v. Milmo National Bank, 69 Tex. 513, 6 S. W. 824.

[21] We sustained the twenty-sixth assignment because the witness Black made the statement on a former trial that the said McBride, a tenant, was in the building on June 10th, the day of the last mortgage. He did not state on this trial that he saw the tenant in the building, and, when asked if he had not on the former trial so stated, he admitted that he had, but that he went back on

the stand during that trial and corrected it. The other fact sought to be impeached was that he said on this trial that:

"I say now, as I said on the former trial, that I am not positive that I saw Mrs. Schrimsher at the Garland place on June 10, 1910, and that on the former trial I testified I went into the house, but I came back on the stand and corrected that error."

And he never said that he thought he saw Mrs. Schrimsher there, appellees then introduce the court stenographer and reproduce the testimony of this witness at the former trial, and did so at great length. We held in our opinion that, when a witness admits to making the statement inquired about, it would be improper to introduce those statements for the purpose of impeachment. The appellees not only introduced this particular evidence, but much more. In addition, a proper predicate was not laid for the introduction of the other testimony given by him on the former trial. We think the particular fact upon which impeachment is desired must be specifically asked the witness, and he given a chance to explain. We do not gather from the record that this was done. We not only think we were correct in our holding on the ground stated in the opinion, but also because no proper predicate was laid for the introduction of the long excerpt from the evidence of the witness at the former trial. Much of this evidence was not hurtful, but some of it, unexplained, was calculated to injure. We believe the rule should be followed in these matters. We desire again to say we followed the statement made by appellant in his brief. Appellees, in their brief, did not see proper to correct or even to object to the statement in appellants' brief as being incorrect and until this motion, where with great care he sets out excerpts from the record. What is said with reference to the testimony of Black is equally applicable to Parker's testimony.

As we understand appellees, it is not seriously contended that we were in error in sustaining the first assignment of error, with reference to the question propounded to each juror on his voir dire, but it is asserted that as we held the deed was not an estoppel, and as appellees set out specially the homestead character of the property, and appellants having failed specially to allege abandonment of the home or the acquisition of the new one and only pleaded estoppel by deed, that the question, under the then state of the pleadings was proper and, if error, harmless.

[22] In this cause the appellees brought suit for the land, setting up appellants asserted a claim by virtue of a deed of trust and foreclosure thereunder; that it was void because at the time of executing the deed the lots were a homestead. Appellants pleaded general denial, not guilty, and specially by estoppel. When appellees brought suit they put their claim under judicial investigation, and appellant had the right to defeat their claim, which would have adjudicated their rights. There was no affirmative action required on the part of the court, and none was necessary to be pleaded. Barnes v. Patrick, 105 Tex. 146, 146 S. W. 154; Barnes v. Williams, 102 Tex. 444, 119 S. W. 89. Where the defendant, in an action of trespass to try title, pleads general denial and not guilty, and also a special defense, he may prove any fact in rebuttal of plaintiff's testimony, but cannot introduce evidence in confession and avoidance, except as specially pleaded. Koenigheim v. Miles, 67 Tex. 113, 2 S. W. 81. Judge Gaines, speaking for the court, in the above case said:

"The effect of the decisions upon this subject is to place a defendant in trespass to try title upon the same footing as to pleading and evidence as defendants in other cases, in the event he pleads specially. * * * If this be correct, it would follow that, if he has pleaded a general denial and not guilty, as well as specially, he could show any fact in rebuttal of plaintiff's testimony, but could not introduce evidence in confession and avoidance or in bar of the action, except as specially pleaded."

[23] The general denial put in issue every fact necessary to establish a homestead on the lots at the time the deed of trust was executed. Proof which might be introduced to establish the fact alleged could be combated thereunder by showing abandonment on the acquisition of the new home. Altgelt v. Emilienburg, 64 Tex. 150; Insurance Co. v. Jefferson Ice Co., 64 Tex. 578. The effect of the authorities cited by appellees is that, when a homestead is shown to exist, it is presumed to continue, and the burden is on the adversary to show abandonment. The fact that such is true does not necessarily require a special plea.

[24] At most, the proof by appellee of the once residence and home on the lots is but a prima facie case. This prima facie presumption can certainly be rebutted by the defendant under general denial. It is not a confessional avoidance or an affirmative matter, but is proof that, in fact, the property was not then the homestead of appellees. The case of Mexia v. Lewis, 87 Tex. 208, 22 S. W. 397, cited and apparently relied on, is not authority on the question in hand. The Supreme Court simply held that a party seeking to recover on a title acquired after suit must set up the title by a plea. In that case a deed was executed to property while the homestead. After the suit was instituted, and while pending, the property was abandoned as a homestead. It was held that abandonment should be pleaded, the court saying:

"It is laid down in this court, as a general rule, that the plaintiff in an action of trespass to try title must recover upon his title as it existed at the time of the institution of the suit, and that, in order to avail himself of an after-acquired title, he must amend so as to avail himself of it as a new cause of action."

Perhaps we should have dismissed the appellees' motion on this point, by stating that this is the first time the position here con-

tended for appears in the record. Appellees did not brief or notice assignment No. 1 originally. We think, however, this contention is not sound, and the fact that we held the deed, under the facts in this case, presented no estoppel, did not destroy its probative force as a fact, and the jury should consider it as a fact for what it is worth, without being pledged beforehand that they would not do so.

[25] Perhaps in this connection we should notice assignments 28, 29, and 30. Mrs. Schrimsher testified, in effect, that when the lots in question were purchased her husband told her that they were to be used as a home, and when they left the lots they would return as soon as she was able. In the original opinion we treated the objection made as one on the ground that this testimony was not in rebuttal, which, in fact, was one of the objections, but there is the further objection made that it was self-serving. We believe this testimony admissible as part of the res gestæ and as explanatory of the cause of the removal and upon the issue whether the removal was permanent or temporary, and whether it was the intention to acquire a new homestead on the place moved to. So far as we have been able to find, the courts uniformly sustain the introduction of such testimony. We mention this testimony in this connection lest we be understood upon another trial as holding the testimony inadmissible.

The appellants also insistently urge that we erred in not rendering the case, instead of reversing it, and insist if we do not render we should modify the opinion so as to "declare the substantive law of the case." The first proposition is:

"The court erred in this opinion in holding that the issue of estoppel as to Mrs. Schrimsher is raised by the facts of this case and ruling, in effect, that on another trial the defendant below, plaintiffs here, must show that Mrs. Schrimsher was estopped in some way by her acts or conduct to claim the property as a homestead."

Upon a reading of this proposition we fail to recognize it as having the slightest acquaintance to anything we held. We held the deed of trust by the husband alone would not estop the wife from setting up a homestead right, if, in fact, the property at the time of the execution of the deed was the homestead. We further found no fact showing that Mrs. Schrimsher signed the deed or was consulted about it or knew that her husband had executed the deed on the lot. We further held she could not be estopped unless she intentionally so conducted herself as that such conduct would be fraudulent. We held, if, in fact, the property was the homestead, the husband could not mortgage it, but we never held:

"That Mrs. Schrimsher was not and cannot be concluded from claiming the homestead rights in the property in controversy unless she is estopped by her conduct from so doing."

We said that, if there were no facts creating an estoppel:

"Then the only issue in the case is: Was the property the homestead, and if so was it abandoned or had Schrimsher acquired another homestead at the time of the execution of the deed of trust?"

We tried to state what was meant by "acquire." We think the trouble with counsel for appellants in this case is that he pleaded the deeds of trust as estoppel, briefed them as such, and argued orally in this court they estopped appellees from setting up the homestead. Under the Constitution and laws of this state, they were and are not such under the facts presented in this record, and we cited authorities to that point not, as counsel seems to think, for the purpose of showing the husband did not have the right to select and designate the home, but we expressly stated the husband has the right to select the home, and, if he in good faith exercises the right, he would have the power to convey or incumber the old home. If he acquired another, the right is vested in him to incumber the old. This right does not rest upon estoppel, but upon the simple fact that the old home is no longer the homestead. Hence appellants' plea of estoppel amounted to nothing. The mere fact that the husband represented the property was not the homestead did not make it so. It does not estop the partnership husband and wife, or, if you please, the wife, from proving the true fact. The partnership had a vested right in it, and the Constitution expressly limits the power of the partner, husband. The homestead cannot be disposed of unless both husband and wife join; neither can estoppel dispose of it unless both join in the acts estopping them. The wife's right cannot be taken from her by a mere representation of the husband that there was no homestead interest. The authorities cited were to this point.

[26] The fact that the husband can select the home does not defeat the home established and vested until in good faith he has selected another or in good faith has abandoned the old. If he did, in fact and in good faith, select the place upon which he was living when the deed was executed as the homestead, then the deed was not void. That, in substance, is the point decided in the case of Slavin v. Wheeler, 61 Tex. 654, upon which appellants rely. The Supreme Court approved the charge embodying the following: If Slavin "moved upon another place of his own with a view of abandoning his old homestead, and acquiring a new one," the jury were instructed to find for Wheeler. The court said:

"There was evidence which showed that in good faith, with no desire to injure his wife, * * * he left the land with the intent never to use it again as a home, and that he established a home on the other land to which he had title."

As will be seen, the question of abandonment and acquiring a new home was a question of fact. In Marler v. Handy, 88 Tex. 427, 31 S. W. 636, the same holding is made; the trial court having found the facts. In cases where property is occupied as a homestead, and the husband alone makes a deed while so occupying it, and after its execution a new homestead is acquired, the grantee will take title by estoppel. This doubtless is the line of authorities appellants had in mind when they pleaded estoppel. Such was the Marler Case, as clearly appears from the opinion and as explained by the Supreme Court in the case of Stallings v. Hullum, 89 Tex. 435, 35 S. W. 4, where the Supreme Court, in concluding its comment on the Marler Case, said:

"It is said in that case that the deed is not void; but it was not meant that it was valid as to the wife, or that it could in the slightest manner affect her rights before a new homestead was acquired."

In this case appellant must recover upon the facts that when the deed was executed appellees or the husband in good faith had abandoned the property in question as a homestead or had acquired a new one upon which they were then residing. If the latter was the homestead, the husband could incumber the old; and, as above stated, estoppel does not arise. The question, as presented by the record in this case, is one of fact. Residing on the last place and the execution of the deed by the husband alone is not conclusive, nor is his declaration. These facts are evidence, it is true, to be considered on determining whether the old was abandoned or a new homestead acquired or whether it was a temporary or a permanent removal, but this question of fact is not in our province to determine, and we cannot hold they are conclusive, in the face of the testimony of the husband and wife that it was only a temporary removal, with no intent to abandon one and to acquire the other; and especially can we not do so when other circumstances tend to show owing to the sickness of the wife they left the place, but with the purpose of returning when her health permitted.

We desire to say that we carefully examined the authorities cited by appellant before writing the original opinion, and expressed ourselves then as clearly as we could, and see no reason, upon a re-examination, to change it. The Hawes Case, 95 Tex. 185, 66 S. W. 209, was clearly decided on estoppel, and the facts there clearly presented that issue. On this motion we feel we have said more than is really necessary; but for the apparent charge on the part of counsel for both appellees and appellant that the case has not been fully considered, we would not have taken up the time and space to answer what appears to be their positions.

The motions of both appellant and appellees will be overruled.