PARRISH & POTTER v. J. K. HAWES ET AL.

No. 1060.   Decided January 20, 1902.

**1.—Homestead—Designation—Estoppel—Mortgage—Charge.**

Though representations of a mortgagor that the property was not his homestead, and his designation of other property as such, can not estop him from asserting his rights in the place solely occupied as his home; yet where there is such use and occupancy of two residences as to fix a homestead character upon either one he should select, he may be estopped by such declaration or selection, relied on by the mortgagee, though the latter did not know nor inquire into the facts as to the use of either property.   (P. 190.)

**2.—Same.**

See facts certified, held to present such issue as to use of two residences as homestead as to require the submission of the issue of estoppel of the owner, in favor of a mortgagee loaning money upon one on the representation that it was not the homestead.   (Pp. 187-190.)

**3.—Case Distinguished.**

Texas Land and Loan Company v. Blalock, 76 Texas, 85, distinguished.   (Pp. 191, 192.)

**4.—Estoppel—Homestead—Representations.**

Where the circumstances are such as to present the question of estoppel by representations as against a homestead claim, the rule applies that the party making representations intending that they should be acted on will not

ordinarily be heard to say that the other should not have believed them. (Pp. 191, 192.)

5.—Charge.

   See facts under which a charge as to mere incidental use of property as a home was not warranted. (Pp. 187, 190, 191.)

   Questions certified from the Court of Civil Appeals, Third District, in an appeal from Travis County.

   *Gregory & Batts,* for appellants.—When two pieces of property, each being sufficient as a homestead, are being used for homestead purposes, and the owner is entitled to one only, his intention will determine which is the homestead, and, as to such intention, estoppel will apply, even though the party claiming the benefit of the principle may not have investigated the matter of occupancy, and may have accepted as true representations which he would have found true in case he had investigated. Railway v. Winter, 44 Texas, 614; Moerlein v. Mtg. Co., 29 S. W. Rep., 165; Haswell v. Forbes, 27 S. W. Rep., 567; Mortgage Co. v. Scripture, 40 S. W. Rep., 214; Mortgage Co. v. Norton, 71 Texas, 683; Land Co. v. Blalock, 76 Texas, 89; Kempner v. Comer, 73 Texas, 202.

   The Court of Civil Appeals, in its former decision, held, construing special charge No. 2, that, though defendants were occupying the Watt street property for the principal purposes of a home, and though they represented to plaintiffs that it was their home and borrowed money on the faith of these representations, still there could be no estoppel unless plaintiffs went to the property and saw the visible, physical acts of occupancy (which they would have seen had they gone there), and unless they made the loan relying on the physical acts of occupancy so observed, and not merely upon the representations of defendants that such acts of occupancy existed (although as a matter of fact they may have existed and did exist, just as represented). It is earnestly contended that the above is not sustained by reason or authority. Where a borrower has a home which he is openly, exclusively, and notoriously using as such, it is in fact his home, and an expressed intention can not change the fact, and estoppel can not do that which contract itself could not do, viz., create a lien upon it. But where a borrower is using two pieces of property for homestead purposes, and is entitled to but one, each being suitable and sufficient for a home, intention alone fixes and decides which is the home, and as to the intention estoppel applies.

   *A. E. Furmin* and *M. L. Robertson,* for appellees.—One lending money upon land can not depend alone upon representations and statements of the borrower that the land is not a homestead; but must take notice of the nature, extent, and character of use and occupancy of the land as it exists at the time of the loan made. Loan Co. v. Blalock, 76 Texas, 89; Pellat v. Decker, 72 Texas, 578; Medlenka v. Downing,

59 Texas, 40; Bridges v. Johnson, 69 Texas, 717; Hines v. Nelson, 24 S. W. Rep., 541; Hawes v. Parrish, 16 Texas Civ. App., 497.

The charge given is precisely correct, for a married woman can not be estopped by declarations of her husband that a homestead does not exist, when it does exist. Nor can his intentions, declarations, or assertions control the homestead, but the actual physical facts, which he can not deny, repudiate, or gainsay, in fraud of the rights of his wife, control the status of the property. McLaren v. Jones, 89 Texas, 131; Cranfill v. Hayden, 55 S. W. Rep., 805; Kallam v. Ludenecker, 28 S. W. Rep., 579; Armstrong v. Moore, 59 Texas, 648; Giersa v. Gray, 31 S. W. Rep., 231; Chace v. Gregg, 88 Texas, 559.

WILLIAMS, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third District certifies for decision the following questions:

"There is now pending and undecided in this court the above styled and numbered cause, on appeal from the District Court of Travis County. The action is one by appellants to recover from J. K. Hawes on a promissory note for $3750, and against J. K. Hawes and his wife to foreclose a deed of trust lien to secure the above note. The property incumbered by that instrument is in the record known as the Live Oak street property, situated in the city of Dallas, Dallas County, Texas.

"The appellees in defense pleaded that at the time the deed of trust was executed, the property in controversy was their homestead, to which defense the appellants plead estoppel. The court submitted the homestead issue to the jury, and verdict and judgment thereon were in favor of appellees, from which the appellants appeal.

"We find the following facts: The deed of trust above mentioned was, on the 7th day of January, 1891, duly and legally executed by appellees, incumbering the Live Oak street property to secure the amount of indebtedness sued for. The deed of trust contained a recital that the property therein described was not the homestead of appellees. At the same time, they executed and delivered to appellants a written designation, in effect stating that their homestead was at that time on lot 6 on Watt street, in the city of Dallas.

"At the time of the execution of these instruments, Brown Bros. were the agents of appellants, and one Freeman acted as their agent in making the loan to Hawes of the amount sued for, and in negotiating the execution of the deed of trust and the written designation of the Watt street property as the homestead of appellees. Freeman at the time resided in the city of Dallas, where the property is situated. Neither he nor Brown Bros. took any steps to ascertain whether appellees were in actual possession and use of the Watt street or the Live Oak street property as their homestead at the time of the execution of the above named instruments of writing; but we find that both Freeman and Brown Bros., acting for appellants in making the loan and accepting the homestead designation and the deed of trust, be-

lieved the representations and statements therein contained concerning the homestead of appellees were true; and upon the faith of such belief, the contract was consummated. And the evidence warrants the conclusion that neither Freeman nor Brown Bros. had any actual knowledge or notice of the actual place of residence of appellees at that time; nor did they make any effort or exercise any diligence to ascertain which of the two pieces of property the appellees were using and occupying as their homestead, but relied upon the statements and designation as contained in the above instruments.

"The court, in its charge to the jury, submitted to them the question whether the appellees, at the time of the above transactions, were in actual use of the Live Oak street or the Watt street property as their homestead; and from the evidence as found in the record, and as being consistent with the verdict of the jury, the conclusions of fact can be reached that the appellees, at that time, were in actual possession, use, and enjoyment of the Live Oak street property as their homestead; and at the time it was a residence and grounds suitable for that purpose. The evidence also warrants the conclusion that before the deed of trust was executed, the Live Oak street property was also used by the appellees as their homestead. And we are authorized from the testimony to also reach the conclusion that the statements in the deed of trust and in the designation referred to, in effect stating that the Live Oak street property was not their homestead, were false.

"We also find that there is evidence in the record tending to show that before the execution of the deed of trust and the homestead designation, and at that time, the appellees were also in possession of and using the Watt street property in a way calculated to produce the impression that it was their homestead. In fact, there is testimony which tends to show that at the time mentioned they were in such manner using both the Live Oak and the Watt street properties. And there is some evidence which warrants the conclusion that the Watt street property was a residence suitable for homestead purposes. We also find that the facts bearing upon the use and possession of the Watt street property by the appellees were of such a character as would authorize the court to submit the issue to the jury, whether at that time they were using and enjoying that property as their homestead: and the same conclusion could be reached as to the Live Oak street property, but the evidence of use of the latter for homestead purposes was much stronger than that which related to the Watt street property.

"The charge of the court did not submit to the jury any element of estoppel. The appellants requested that the court give the following charges, which are numbered 1 and 2 respectively, which the court refused, and which action is complained of by proper assignments of errors and propositions contained in appellants' brief:

" 'If you believe from the evidence that at the time the loan was made, on January 8, 1891, the defendant J. K. Hawes was using as a homestead both the Watt street property and the Live Oak street prop-

erty and was not using either one of them exclusively as such, and that. he and his wife, for the purpose of procuring the money represented by the note sued on, made the statements contained in the homestead designation and deed of trust, to the effect that they were then using and occupying the Watt street property as their homestead, and that. no other property except the Watt street property constituted at the time any portion of their homestead, and that plaintiffs, through their agents, made the loan represented by the note sued on in this case on the faith of said statements, believing them to be true, and that but for said statements plaintiffs would not have made said loan, then you will find for plaintiffs, foreclosing the lien to secure the note herein sued on on the property described in plaintiff's petition, as defendants would be estopped from claiming said property as a homestead.

" 'If the defendants on said 8th day of January, 1891, were actually using and occupying the Watt street property as their home for all the principal purposes of a home, and were only incidentally using the Live Oak street property, and said defendants, while so using and occupying said Watt street premises, represented to plaintiffs that said Watt street property was their homestead, and then used and occupied by them as such, and that said Live Oak street property was not their homestead, or claimed or used by them as such, and said representations were made by Hawes and wife for the purpose of securing a loan on the premises on Live Oak street from plaintiffs, and plaintiffs and their agents making said loan believing said statements to be true and relied on the same and on the belief of the truth of such statements, made the loan of money here sued for on the Live Oak street property, and plaintiffs or their said agents making said loan had no notice that such statements were false, or had no notice of such facts as would have put an ordinarily prudent man upon inquiry as to the truth of such. statements, which, if followed up, would have shown their falsity, then,. if you find the facts to be as stated in this charge, you will find the defendants are estopped from now claiming said Live Oak street property as their homestead, and you will find for the plaintiffs against both defendants, foreclosing their deed of trust on the premises therein described.'

"In view of the above statement and findings, the Court of Civil Appeals of the Third Supreme Judicial District of Texas certifies to the Supreme Court of Texas the following questions:

"1.   Does the issue of estoppel arise from the facts as above stated?

"2.   Was it error for the court to refuse to give either or both of the above mentioned charges?"

1.   The charge of the court, as stated, in submitting to the jury the question whether the parties were in the actual use of the one property or of the other as their homestead, gave no rule to enable the jury to determine the case, in the event thy found to exist another state of facts which there was evidence tending to establish, viz., that. the parties were in such use of both places.   If such was the fact, and

there were no others to fix conclusively upon one place, to the exclusion of the other, the character of the homestead exempt from forced sale and protected from mortgage, it was within the power of the husband and wife, by their conduct, to attach their exemption to one, and to estop themselves from afterwards claiming it for the other. The certificate states no such other facts, and we must assume that some of the evidence tended to show such use of each place as would be sufficient to make it homestead, if its owners chose to so treat it. The other facts show that they represented the Watt street property to be their homestead, and that this was believed and acted on by plaintiffs' agents in lending the money upon the Live Oak street property. We are of the opinion that a question of estoppel arose from these facts.

It may happen that families, the heads of which own more than one place suitable for a residence, will reside sometimes upon one and sometimes upon another, in such a way that either serves to meet all the purposes of the home. No question of exemption or of power to mortgage or alienate may have ever arisen to make it necessary for them to select the place which will be claimed and held as the home. Upon this state of facts alone, no court could say, as matter of law, which one of the places thus used constitutes the homestead to which the constitutional protection is given, nor could persons dealing with the owner of the property. To determine the question thus arising, something more than mere use would have to appear. In such cases, we see no reason why the husband and wife, if not the husband alone, would not have the absolute right, when occasion arises, to determine by selection the place to be held and protected as the homestead; nor why, after having selected and designated one of the places and mortgaged another to a lender acting upon the faith of the selection, they should not be estopped, as to him, from claiming the mortgaged property as exempt.

Under this view, the provisions of the mortgage and the statements in the other paper, called the designation, would amount to such an election, nothing having been previously done to impress definitely upon the Live Oak street property exclusively the homestead character, and these facts thus present a question of estoppel. Or, if it were held that, the use of both places being sufficient for homestead purposes, the mere intention of the owners to hold the one or the other as their homestead would give it character as such, an estoppel might arise from their misrepresentation of their intent. The intention could only be definitely known to and disclosed by themselves, and, if facts had not transpired which certainly made one of the places their homestead under the law, persons dealing with them would naturally rely and act upon their statements as to its existence, in such way as to estop them from afterwards disputing the truth of the representations made.

2. The second special charge does not seem to be applicable to the facts stated in the certificate. No evidence is given under which the

jury could have found that the defendants were "only incidentally using the Live Oak street property," while the use of the other place was for all the principal purposes of a home. The case made is that both were in use and the most that plaintiffs could claim under the evidence is that the occupancy of the Watt street property was sufficient, and not that the use of the other place was only incidental to it. Upon this state of facts alone, the court did not err in refusing this charge.

The first special charge is applicable and should have been given, unless there were other facts than those stated requiring a qualification of it.

It is urged that plaintiffs' agent had no right, without inquiry into the facts as to the homestead rights of the defendants, to rely upon their statement that the Live Oak street place was not their homestead, and, to sustain this contention, the case of Texas Land and Loan Company v. Blalock, 76 Texas, 85, and other cases supporting the doctrine there laid down, are relied upon. In that case, Blalock and wife, at the time they gave the mortgage, were living upon the mortgaged property as their home and used no other property as such. They represented that it was not their homestead, but that other land was, which they did not then and had never resided upon or used as a home. In fact and in law, the property mortgaged was their only home, and the court so held, saying, "If property be homestead in fact and law, lenders must understand that liens can not be fixed upon it and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and incumber homesteads with liens forbidden by the Constitution." It was further said: "The fact of actual possession and use as the home of the family was one against which the lender could not shut his eyes, and this fact, coupled with the interest held by the borrowers in the land, made the property homestead in fact and in law, on which the Constitution declares no lien such as claimed in this case can exist." These observations were perfectly just and true of the case before the court, and of all others in which the facts so unequivocally manifest such exclusive use of the one piece of property as homestead that the law stamps it as such. Its status, in fact and in law, is thus established, and of this all persons must take notice, and hence declarations of the husband and wife plainly contrary thereto can not be relied on. But if we should attempt to apply the doctrine to the present case, which one of these places should we say was in law the homestead of defendants? Plainly we could say this of neither place, and if the court can not know this, how can it be held that persons dealing with the husband and wife must know it from the same facts? The determination of the homestead depending, as we have seen, either upon the election of the parties or upon the existence of an intention in their minds, every one who would ascertain the homestead must necessarily learn what election is made or what intention exists. This

is precisely what the lender did. The fact of an unequivocal and exclusive use of one place to the exclusion of the other was not present, as in the Blalock case, to notify the lender that the representations made were false, that they were, in truth, misrepresentations not only of patent and notorious facts, but of a legal status which the property had acquired. If possession and use in the Blalock case notified the lender that the property on which they were lending money was certainly and unequivocally the homestead, the possession and use in this case notified the lenders that either place might be the homestead upon the election or intention of the owners, and this was the point upon which the declarations were sought and made. Such declarations were not contrary to but consistent with facts which the evidence tended to establish. If, under such facts, the mortgagors could disregard such action and defeat the mortgage upon the plea of homestead, the same defense, under the same facts, would have been open to them had they made such representations concerning the other property and mortgaged it.

It was also urged in argument that the special charge was defective in not leaving to the jury the question whether or not plaintiffs' agents, as prudent men, were justifiable in relying on the statements made. This may undoubtedly be an element of estoppel which should be explained to a jury in a case calling for it; but upon the case made by the certificate and supposed in the instruction, we think the court should have assumed that reliance on the statement was justifiable. Supposing the facts to be as stated and that no others appeared to indicate to the lenders the untruth of the representations, there was no reason why the plain and unequivocal statement by the parties, who alone knew the facts stated, might not be implicitly relied on by persons so dealing with them. While it may be true that a person can not assert an estoppel based upon a misrepresentation which, under the circumstances, he ought not to have believed and acted upon, it is, we think, equally true that where one states a fact which is or should be within his knowledge, intending that it be believed and acted on as true, he should not ordinarily be heard to say that the other party ought not to have believed him, there being nothing to show to such other the falsity of the representation. Nichols-Steuart v. Crosby, 87 Texas, 452; 7 Am. and Eng. Enc. of Law, 16, and cases there cited.

The certificate states no fact within the knowledge of the lenders to show that they were not justifiable in believing the representations made to them, and hence, upon these facts, the charge requested was sufficient for the case.

It is perhaps proper that we add that we do not mean to hold that because two places may have been used as the home, one of them may not have been, by the claim and conduct of the owners, so clearly and unequivocally designated as homestead as to make it such in law, and to require all persons dealing with them to take notice of its status. We deal only with the facts certified.