### DODSON et al. v. DICKEY et ux.
### (No. 2953.)

(Court of Civil Appeals of Texas. Texarkana. June 28, 1924. Rehearing Denied July 5, 1924.)

**1. Homestead ⟷38—Rule stated as to power of husband to designate homestead and incumber land not so designated without concurrence of wife.**

Where entire tract claimed by husband at time mortgages were executed was either his separate porperty or belonged to community estate of himself and wife, as head of family he might designate that part of tract which constituted family homestead and incumber land not so designated with valid liens without concurrence of his wife, and even over her objection, his only limitation being that he could not fraudulently deprive his wife of a homestead nor substitute for land actually used for homestead purposes, other lands not so used.

**2. Homestead ⟷38 — Designation of homestead will estop from setting up against mortgagee of land not so designated different homestead claim.**

Where head of the family designates the homestead, such designation will estop both him and wife to thereafter set up against mortgagee of lands not so designated different homestead claim.

**3. Homestead ⟷57½—Evidence held not to raise issue of fraud by husband as against wife in designation of homestead.**

Evidence that husband, in procuring loan on tract of land, designated as homestead place situated upon public highway and near school, which children attended, and which was no less desirable as location or less valuable than another place on same tract in which husband and wife formerly resided, held not to raise an issue of fraud by him as against wife, in so designating homestead.

**4. Homestead ⟷38—Objection by wife upon preference alone will not control husband's legal right to designate property as homestead.**

An objection by the wife to the selection of a place as homestead based upon preference alone will not control her husband's legal right to designate it as a family homestead.

**5. Homestead ⟷39—Plaintiffs held estopped to assert that designation in mortgage as homestead of lands not covered by mortgage was incorrect.**

In suit to restrain foreclosure of trust deed on ground that property was plaintiffs' homestead, designation of the homestead as set out in application for loan and deeds of trust, *held* to estop plaintiffs from claiming that such instruments did not correctly designate homestead, where no one did or said anything calculated to prevent them from making an examination of such instruments before signing.

**6. Acknowledgment ⟷6(3)—Failure of wife to acknowledge deed of trust separate from husband held immaterial.**

Failure of the wife to acknowledge validity of a deed of trust separate and apart from her husband did not affect its validity, where her signature to that instrument was wholly immaterial.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Suit by J. C. Dickey and wife against J. L. Dodson and others, in which defendants filed a cross-bill. Decree for plaintiffs, judgment for named defendant against named plaintiff on the cross-bill, and defendants appeal. Reversed and rendered in part and affirmed and rendered in part.

See, also, 247 S. W. 615.

Will D. Pace, of Troup, and E. Newt Spivey, of Texarkana, for appellants.

John B. Guinn, of Jacksonville, and Norman, Shook & Gibson, of Rusk, for appellees.

HODGES, J. In 1919 J. C. Dickey was the owner of 626 acres of land consisting of several different tracts situated in Cherokee county, on which he wished to borrow some money. In August of that year he made a written application for a loan of $12,000, appointing H. M. McIver, of Texarkana, Ark., as his agent to procure the loan. The application was taken by J. L. Dodson, to whom the notes later given were made payable. It appears, however, that Dodson was acting for the Security Mortgage Company of Texarkana, Ark. Dodson, who inspected the land, recommended a loan of $11,000, which was made. The principal debt was divided into three parts, and was evidenced by two separate notes for $3,500 and one note for $4,000, due several years later. The interest on those notes was payable annually, and separate interest notes were given for the amount due each year, making 21 interest notes, three of which matured in September of each year. To secure the payment of the principal notes Dickey and wife executed three separate deeds of trust, in which McIver was named as trustee. The $4,000 note was secured by a deed of trust on 201½ acres of land, which will be hereinafter referred to as the "Prior place," on which Dickey

---

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and family then resided. One of the notes for $3,500 was secured by a deed of trust on 200 acres formerly owned by Dickey's parents, and on which he and his family resided prior to their removal to the Prior place. This place will be hereinafter referred to as the "old Dickey place." The second note for $3,500 was secured by a deed of trust on three other tracts of land, not involved in this controversy. The interest notes were secured by three other deeds of trust expressly made subordinate to the lien securing the principal debt. All of those instruments were signed by Dickey and wife, and the deeds of trust appear to have been properly acknowledged by them and filed for record. The interest notes maturing in 1920 were paid by Dickey, but default was made as to those maturing in 1921. It was stipulated that a failure to pay any one of the interest notes at maturity would authorize the holder to declare all of that series due and to have the lien foreclosed. In October, 1921, McIver, as trustee, advertised the land for sale. In November following Dickey and wife filed this suit, asking for a writ of injunction to restrain the sale of the 200 acres referred to as the "old Dickey place," alleging that this was their homestead at the time the deed of trust was executed, and for that reason the incumbrance was void. Dodson, who appears to be the holder of the notes, and McIver, the trustee, were made parties defendant in that suit. They answered, denying that the 200 acres above referred to were the homestead of Dickey and wife. They also pleaded that, if it was then regarded by the plaintiffs as their legal homestead, they are estopped to now urge that claim, because of the written designation of other lands as their homestead, made at the time the deeds of trust were executed. Defendants also pleaded the debt evidenced by the interest notes and the liens created to secure their payment, and ask for a personal judgment against Dickey and wife for the amount of the debt and a foreclosure of the lien. Dickey and wife answered, alleging that, if the deeds of trust or other instruments signed by them contained the designation of a homestead other than the 200 acres known as the "old Dickey place," such instruments were executed under a misapprehension of that fact. They allege that they did not read the deeds of trust at the time they were signed; that they were prevented from so doing by the representations of appellants' agents then present that the papers were properly drawn and in accordance with the original agreement between Dickey and Dodson. They say that it was understood between Dickey and Dodson that the 200 acres composing the old Dickey place was not to be included in the mortgages given. Mrs. Dickey also pleaded that, if there was an agreement between Dodson and her husband to designate land other than this 200-acre tract as the homestead, such an agreement was in fraud of her rights and without her knowledge or consent.

In a trial before the court a judgment was rendered in favor of Dickey and wife granting the writ of injunction prayed for restraining the sale of the 200 acres claimed as the homestead. A personal judgment was rendered against Dickey in favor of Dodson for the amount of the debt set out in the cross-bill, and a foreclosure of the lien on that portion of the land not included in the old Dickey place. Dodson and McIver have appealed.

Without discussing the assignments of error in detail, we shall consider the questions which go to the merits of the case. Is the evidence sufficient to support the judgment of the court?

While there is some conflict in the evidence, there are some facts which are apparently undisputed. It is conceded that at the time the deeds of trust were executed Dickey was residing on a tract of land known as the "Prior place." That consisted of 101½ acres, which was joined by another tract of 100 acres situated in the Howat survey. He had formerly resided on the 200 acres known as the "old Dickey place"; but about two or three years before had moved to the Prior place, where he continued to reside until after this suit was filed. He then moved back to the old Dickey place, and continued to reside there until the residence on that place was destroyed by fire.

In the written application executed by Dickey at the time he sought the loan he gives a somewhat general description of his land. In this statement he says:

"Land located in the county of Cherokee, state of Texas: 101½ a. Allison H. R.; 100 a., 200 a., 40 a., 61 a., 124 a., Ellison H. R.; containing 626 acres. Land is situated eight miles S. from Troupe, the nearest R. R. market. Population 1,800, and 24 miles N. from Rusk, the county seat. Twelve miles N. E. from Jacksonville. Is land on public road? Yes. Name: Jacksonville and Troupe. Conditions, fair. One-half mile to schoolhouse; half mile from a church."

He describes the 626 acres as susceptible of cultivation; 410 acres as then in cultivation, 50 acres in pasture, and 150 acres in timber; 475 acres fenced, divided into four different fields. He lists five residences, six tenant houses, and barns, all worth $3,000. He gives his indebtedness for which the land was partially incumbered at approximately $9,000. In answer to the question, "Is any part of the land your homestead?" he says, "Yes." "Give a full description of homestead." "101½ acres Allison, 100 acres Ellison H. R." In the deed of trust given on the old Dickey place to secure the note for $3,500 it is recited that the land therein described is no part of the homestead. The same recital is in the deed of trust covering

three other tracts of land, not involved in this suit; but no such recital is found in the deed of trust covering the Prior place and the 100 acres adjacent. It is apparent from the record that the $4,000 secured by a mortgage on the Prior place represents that much of the original purchase money then unpaid.

[1, 2] It appears from the evidence that the entire 626 acres of land claimed by Dickey at the time the mortgages were executed were either his separate property or belonged to the community estate of himself and wife. As the head of the family he had the right to designate the 200 acres of land which should constitute the family homestead and to incumber the land not so designated with valid liens. This he could do without the concurrence of his wife, and even over her objection. That right was subject only to the limitation that he could not fraudulently deprive his wife of a homestead; nor could he substitute for land actually used for homestead purposes other lands not so used. Parrish v. Hawes, 95 Tex. 192, 66 S. W. 209; Affleck v. Wangermann, 93 Tex. 351, 55 S. W. 312; American Freehold Land Mortgage Co. v. Dulock et al. (Tex. Civ. App.) 67 S. W. 172. Such a designation by the head of the family may be made either in the statutory form or by stipulations to that effect in mortgages given upon the property. Parrish v. Hawes, supra. When so made the designation will estop both the husband and the wife to thereafter set up against the mortgagee a different homestead claim.

[3, 4] There are no material facts in the record before us which justify an inference that in designating the Prior place as the family homestead Dickey did not act in good faith. That place was situated upon a public highway and near the school which the children were to attend. There is no evidence that it was less desirable as a location or less valuable than the old Dickey place. The fact that Mrs. Dickey may have preferred to live at the latter place is not sufficient. An objection on her part to the selection of the Prior place based upon that preference alone would not control her husband's legal right to designate it as the family homestead. It can hardly be said that the issue of fraud on the part of the husband in designating the homestead is raised by the evidence in this case. He testified that he made no designation other than the old Dickey place. If his testimony and that of his wife be taken as true, the only designation made is that which the law implies from the recitals appearing in the application for the loan, and those in the deed of trust. These, they assert, were fraudulently inserted by Dodson, and their signatures to those instruments were procured by a deception.

We pass, then, to the question: Was the designation set out in the application for the loan, or that embraced in the two deeds of trust thereafter executed, binding upon the appellees? According to the evidence relied on by the appellees, the application was prepared by Dodson the day the land was inspected, and was signed by Dickey without reading it. Nothing is shown to indicate that Dodson then did or said anything to induce Dickey not to read the application; nor is it shown that Dickey did not have ample time for reading it. Dickey and Dodson were comparative strangers to each other, and were opposing parties to an important business transaction. Common prudence demanded of Dickey, at least, a casual inspection of what he was signing. Some time after the application was signed the deeds of trust and the notes were prepared and sent by Dodson to the Guaranty State Bank at Troupe for the purpose of having them signed and the deeds of trust properly acknowledged. Those papers were committed to the care of B. C. Dickenson, one of the bank officials, who had no other business connection with Dodson or his company. Apparently by appointment previously made Dickey and his wife went to the bank for the purpose of executing the papers. According to Dickenson's testimony they were there about three hours, engaged in discussing the papers and in signing and acknowledging them. They had every opportunity on that occasion and all the time they needed to read the papers carefully. The testimony fails to show that any one did or said anything that was calculated to prevent them from making an examination of each paper before signing. The statements upon which they rely as excusing them for signing without reading are wholly insufficient. In Moerlein v. Scottish Mortgage & Land Investment Co., 9 Tex. Civ. App. 415, 29 S. W. 948, Justice Collard, in discussing the effect of an estoppel, said:

"If Mrs. Moerlein did not read the statements in the deed of trust, it was her fault. No one prevented her from reading them. Brown Bros. did not prevent her, and they had the same effect in deceiving them, and inducing them to loan the money, as if she had read and understood them. She cannot now be heard to say she did not know what she was doing. She was culpably negligent in not informing herself of the contents of the instrument she was signing."

[5] See, also, Texas Midland Railway Co. v. Hurst, 262 S. W. 172, recently decided by this court, and Ruling Case Law, vol. 6, p. 624. It is immaterial what had been said by Dickey in previous conversations with Dodson and other parties regarding his intentions to still claim the old Dickey place as his homestead. He had the legal right, on the day those papers were signed, to designate as the family homestead a different place—the one on which they were then ac-

tually residing and using—and that designation would be binding on his wife. The papers, executed formed the basis of the business transaction then being concluded. They contained the terms and conditions on which the loan was to be made. When these instruments were returned, executed in proper form, and the money advanced, Dodson had a right to assume that his loan was accepted upon the terms and conditions expressed in the papers. He had a right to assume that Dickey and his wife were familiar with the contents of those papers and had agreed to the contract as written. The appellees are therefore estopped to now claim that the writing is not a true expression of the contract and of the homestead designation. Scottish American Mort. Co. v. Scripture (Tex. Civ. App.) 40 S. W. 210; Leslie v. Elliott, 26 Tex. Civ. App. 578, 64 S. W. 1037; McGaughey v. American Nat. Bank, 41 Tex. Civ. App. 191, 92 S. W. 1003.

In discussing the sufficiency of the evidence so far we have considered only the undisputed facts and the testimony of the appellees. There is other evidence which strongly contradicts the testimony of both Dickey and his wife, and some of it from witnesses who apparently had no interest in this controversy.

[6] Appellees also undertake to impeach the validity of the deed of trust upon the old Dickey place on the ground that it was not acknowledged by Mrs. Dickey separate and apart from her husband. Mrs. Dickey's signature to that instrument was wholly unnecessary. It is therefore of no importance whether she properly acknowledged it or not.

The judgment of the district court granting the injunction will be reversed and judgment here rendered dissolving the temporary injunction heretofore issued by the trial court and directing that appellees take nothing by their suit. The personal judgment in favor of Dodson against Dickey will be affirmed; and judgment here rendered directing a foreclosure of his lien on the land described in his cross-bill.