## MERCHANTS' & PLANTERS' STATE BANK OF WINNSBORO v. NICHOLS et ux.*
### (No. 3095.)

(Court of Civil Appeals of Texas. Texarkana. June 10, 1925. Rehearing Denied June 18, 1925.)

Homestead ⬤⟶38—Deed of trust on farm, accompanied by designation of town lot as homestead, held valid.

Where husband and wife, in order to obtain renewal of note executed by husband, executed deed of trust on a farm owned by them, accompanied by a formal designation of homestead in town lot on which they were residing, there being no fraud or undue advantage, the lien was valid, though husband and wife previously intended to claim farm as homestead.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Action by the Merchants' & Planters' State Bank of Winnsboro against W. A. Nichols and wife. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

The appellant brought the suit against W. A. Nichols to recover on a promissory note, and to foreclose a mortgage lien on 43⅕ acres of land. The petition alleged, that to secure the payment of the note sued on, the defendant executed a deed of trust covering certain land, describing it; that in preparing the deed of trust the writer by error misdescribed the land, and that the error was a mutual mistake; and asked that the description be corrected and the mortgage lien thereon be foreclosed.

The defendant answered by a general denial, and specially pleaded adjudication and discharge from bankruptcy; that the debt was a provable claim, and the same was scheduled, that the premises described in the deed of trust was the homestead of himself and wife, and as a consequence the deed of trust was null and void.

Mrs. Nichols, wife of the defendant, joined in the suit, setting up that the land intended to be described in the deed of trust was purchased with her separate funds and was her separate property, that the land was the rural homestead of herself and her husband at the time of the execution of the deed of trust, that it had never been abandoned, and that they owned or had acquired no other homestead; and asked that the deed of trust be declared void and of no effect.

The plaintiff filed a supplemental petition, specially averring that at the time of the execution of the deed of trust the defendants owned a house and lot in the town of Winnsboro, and occupied and used it as their actual place of residence; that there was designation of such house and lot as the homestead, made in writing, signed and acknowledged by both Mr. Nichols and his

wife, and duly placed of record; that the homestead designation was made to induce the plaintiff to renew and extend the indebtedness sued on; that the parties were estopped from setting up a different homestead. Mrs. Nichols pleaded that she never signed a homestead designation.

It was agreed that there was a misdescription in the deed of trust of the land intended to be mortgaged, and, in the event it was determined that there was a valid lien thereon, the proper description could be made. The following agreement was entered into:

"It is agreed by and between the parties hereto that: Defendant Arthur Nichols was duly adjudged a bankrupt by the United States District Court for Eastern District of Texas; the adjudication in bankruptcy was after the execution of the deed of trust sued on, and before this suit was filed; that the note sued on in this case was scheduled in that proceeding; that the said bankrupt has been discharged by the bankruptcy court.

"It is further agreed: That in the schedule that said bankrupt filed in the bankruptcy court he designated as his home the same tract of land which he is here contending for as his homestead, but that he scheduled this note as a lien against the same.

"It is further agreed: That the land intended to be described in the deed of trust is that described in plaintiff's petition in paragraph 2 as being the land intended to be described, and on which a lien is supposed to have been created."

The case was submitted to the jury on the following special issues:

"Q. (1) Was the land described the homestead of defendant and his wife at the time the deed of trust was executed? Answer: Yes.

"Q. (2) Did the representatives of the bank at the time of the execution of the deed of trust and at the time of the homestead designation in question, know or have knowledge that the defendant claimed the land and premises in controversy to be his homestead? Answer: Yes.

"Q. (3) In executing the deed of trust and the homestead designation, did W. A. Nichols in so doing act in fraud of the rights of his wife? Answer: No."

The court entered a judgment that the plaintiff take nothing by the suit, and that the lien of the deed of trust be held for naught, as upon land being and composing the homestead of W. A. Nichols and his wife and family.

It appears from the evidence that in the year 1910 Mr. Nichols, at the time a married man with a wife and one child, bought the land in suit, a farm of 43⅕ acres, situated about 3½ miles from the town of Winnsboro. He lived on the land with his family, as the homestead, using and cultivating the same. In December, 1918, Mr. Nichols and his family moved to Winnsboro. Mr. Nichols "to begin work in the store" as a clerk, and "in order to send the children to

school." There were three children at the time who were old enough to go to school. In moving to town it was not with the intention, as shown, of staying away from the farm or abandoning it as a homestead. In the meantime he erected a new residence on the farm. In the early part of 1920 Mr. Nichols bought lot No. 2 in block Y–1 in the town of Winnsboro, and occupied the premises with his family. He purchased the lot partly for cash and partly on credit, executing notes for the deferred payment. In the summer of 1920 he acquired an interest in the grocery store in which he was working. executing a note for the purchase price. It is this note and the deed of trust to secure it that becomes the ground of controversy in this suit.

It appears that Gordon Alvis owned a third interest in a mercantile business, and in August, 1920, proposed to sell his interest to W. A. Nichols. Mr. Nichols agreed to purchase the one-third interest, paying the invoice price therefor. An estimate was made at the time of what the goods would invoice, and Mr. Nichols executed his note for that amount. The note was for $4,000, dated August 10, 1920, and payable "on demand to the Merchants' & Planters' State Bank at Winnsboro." The only explanation appearing for making the note to the bank rests in the following statement of Mr. Nichols, viz.:

"I did not buy the stock from the bank, not directly from the bank. The bank did not have any interest in it, but I think the bank put the money up (meaning to Alvis)."

Alvis was cashier of the bank. It appears, however, that it was agreed that the $4,000, so estimated, was to be credited, if need be, by the actual invoice price shown when made. The invoice subsequently taken showed the goods, as to one-third, to be in the amount of $3,310.58. Thereupon on October 10, 1920, W. A. Nichols executed his note for the $3,310.58, with $82.75 as interest from August 10, aggregating $3,393.73, payable to the bank on March 10, 1921. At the time of the execution of this note on October 10, Mr. Alvis, cashier of the bank, insisted on security being given for the note. Later, on November 10, 1920, W. A. Nichols executed a deed of trust on the farm to secure payment of the note. The deed of trust recited:

"And I hereby covenant with the holder of said note that I have good title to the property, and that same is free from all incumbrances, and that same is not any part of business or resident homestead, and is not in any way occupied, used, or enjoyed as such."

On the same day of November 10, 1920, and at the time of the execution of the trust deed, W. A. Nichols and wife signed and acknowledged an instrument in writing setting apart and designating "as the homestead to which our family is entitled under the Constitution and laws of this state, exempt from forced sale, all that tract or parcel of land in the town of Winnsboro, Wood county, Tex., described as follows: Being lot No. 2 in block Y–1 as shown by the official map of the town of Winnsboro, and within the corporate limits of said town." The instrument was promptly recorded. At the time of the designation and prior thereto Nichols and his wife and family were actually residing upon the town lot, and the farm was rented out. Nichols at the time was actively engaged in the mercantile business. In May, 1921, the note, being unpaid, was renewed and extended to December 1, 1921. According to the evidence of appellee Nichols, the deed of trust and the designation of the town lot as homestead were made under the circumstances here stated. He testified:

"On October 10, 1920, I gave the note for that amount of money, and then, 30 days later, on November 10, 1920, the deed of trust that I signed. I am asked to now tell about the execution of the deed of trust and what was said by me and what was said by them (the bank) at the time it was done. At the time I bought the store interest of Gordon Alvis I did not give any security on the paper given. Later on (October 10), Gordon Alvis told me that he was going to have a new note or a note secured in some way in order to get by with the bank. He said the bank was in bad shape, and he wanted and was going to have some collateral, and that he had come to me about putting up that place (the farm). I said, 'Gordon, that is our homestead, and I wouldn't put that up to you or anybody else, nor even let you have it.' One word then brought on another. I gave the deed of trust that way It was before the time the deed of trust was given that I told Gordon Alvis about the place being our homestead. When I told him that, he said, 'That's all right; you will never lose it. I have got to have some security on the note.' * * * He said, 'I have got to have some security to get by the bank examiners. They are working the bank for it, and I have got to have some collateral to get by with the bank.' This conversation was some time like a month, maybe, after I had given this original note (August 10). * * * I testified about a conversation with Gordon Alvis at the time when this deed of trust which is here in evidence was given."

The testimony in behalf of the bank is that all indebtedness to it was being collected or secured under instructions from the state commissioner of banking, and that this note of Mr. Nichols was one that was being pressed by the bank for collection or security, as it was past due and unsecured. The president of the bank testified that the note dated October 10, 1920, was drawn before the date of the deed of trust as a proposed renewal by Mr. Nichols, but the bank would not accept it as such unless or until secured. He testified:

"The date on which this note was actually accepted by the bank was November 12, 1920. I would not have accepted it without the deed

of trust as collateral and the homestead designation."

The president was in active charge of the collections of all of the bank's notes and claims, and was enforcing collection or security. Mr. Nichols, however, testified that he never talked with the president, and that he had dealt only with the cashier about the note and the giving of security therefor. Mr. Nichols further testified as follows:

"I made a designation of my homestead. I don't know how come me to do it. Nobody asked me to do it; there wasn't anything said about it, only some papers brought up there to sign. There never was a word said to me about designating anything as a homestead."

Mrs. Nichols admitted signing and acknowledging the homestead designation, and testified that: "No; nobody ever asked me to sign a designation of my homestead." There is no pretense of any evidence showing fraud or undue advantage of Mrs. Nichols in the designation of the homestead. No one insisted upon Mr. Nichols making the designation, and no one misled him into doing so. It was done by him with the intention of having the bank accept and extend the due date of the note. The entire evidence is consistent with the conclusion that the bank, acting through both the president and the cashier, Alvis, was in good faith insisting upon security for the note, in renewal and extension of the same, and that the cashier, Alvis, dealing directly with Mr. Nichols, did not act fraudulently in respect to the deed of trust, or with deception to obtain a lien on the farm land.

About Christmas of 1920 W. A. Nichols and his family moved back to his farm. He cultivated the farm in 1921, working part of the time on the farm and part in the store in town. In the summer of 1921 W. A. Nichols sold the house and lot in town, being unable to pay the balance of the purchase money due. In October, 1921, a petition in bankruptcy was filed, the store business becoming insolvent. In the bankruptcy, it appears, this farm was scheduled and allowed as exempt as homestead. As an agreed fact, "the note sued on was scheduled" as a liability, and "as a lien" against the land claimed as homestead. As further agreed, W. A. Nichols has been formally discharged in the court of bankruptcy.

W. D. Suiter and H. L. Wilkinson, both of Winnsboro, for appellant.

Jones & Jones, of Mineola, for appellees.

LEVY, J. (after stating the facts as above). The appellant's requested peremptory instruction to the jury was refused, and is here made the basis of complaint. The proposition, in effect, presents the point in view that both W. A. Nichols and his wife are estopped from asserting their claim to an exemption in the farm land by creating a lien upon the farm land by a trust deed, and by having designated and claimed a homestead in the lot in the town of Winnsboro upon which they were actually residing, inducting the belief in the bank that all claim to a homestead in the farm land had been abandoned. The proposition must be considered in the light of the special circumstances of the case. It is admittedly shown that, at the date of the trust deed creating a mortgage lien on the farm land, Mr. Nichols, with his wife and family, were actually residing on the lot owned by him in the town of Winnsboro, and that they had been residing there for some time. It can be conceded as a fact warranted by the evidence that previous to the date of the trust deed Mr. Nichols and his wife had not abandoned the farm as their homestead, but intended to ultimately use and occupy it as their homestead as in previous time done, although actually residing upon the town lot at the time in question. Further, too, it can be conceded as a fact warranted by the evidence that, previous to the date of the execution of the trust deed, the bank officials knew that Mr. Nichols and his wife had used and occupied the farm as their homestead, and that they intended to claim it as their homestead, although they were presently residing upon their town lot. But the acts of Mr. and Mrs. Nichols, coupled with their written declaration at the time of the execution of the trust deed, present special circumstances to which legal effect must be given. W. A. Nichols, in a grocery business, and owing the bank a valid and subsisting indebtedness past due and unsecured, executed a trust deed creating a lien on his farm land. The trust deed was given as security for the indebtedness upon the condition of a renewal and extended due date, and for no other purpose.

At the same time of the execution of the trust deed Mr. Nichols and his wife executed and placed of record a formal written designation of the lot in the town of Winnsboro upon which they were actually residing as their homestead. The bank, then, two days after the execution of the trust deed and the homestead designation, accepted the proffered renewal note in lieu of the past-due and unsecured note, relying upon the claim to a homestead in the town lot. Mr. Nichols, owning two places, had the legal right to designate which place should constitute the family homestead, and to incumber the land not so designated with a valid lien. Acting in good faith and not in fraud of his wife, Mr. Nichols could at any period of time select and designate which place should constitute the family homestead. And although he may have intended to claim the farm as his homestead previous to the time of the trust deed, yet he had the legal right, on the very day the trust deed and the designation were signed, to choose and designate as the family homestead the town lot on which he

and his wife were then residing. As a consequence of that legal right that designation would be binding on both Mr. Nichols and his wife, if in the final selection and designation of the town lot as the family homestead Mr. Nichols acted freely, in good faith, and not fraudulently. And therefore if he so acted it is immaterial what his previous intention was, and what had been previously said by him to the bank cashier regarding the farm as his homestead. In this respect Mr. Nichols admits that he freely and of his own volition made the homestead designation upon the town lot. No other conclusion can be reasonably reached upon his testimony. He plainly and frankly stated:

"I made a designation of my homestead. I don't know how come me to do it. Nobody asked me to do it; there wasn't anything said to me about it, only some papers brought up there to sign. There never was a word said to me about designating anything as a homestead."

And Mrs. Nichols, too, stated: "Nobody ever asked me to sign a designation of my homestead." There is no semblance of proof that the bank officials even suggested to Mr. Nichols the execution of the designation, and there is no pretense of any evidence of fraud, coercion, or undue advantage or influence directed towards Mr. or Mrs. Nichols bringing about the selection and designation. There is no claim even in their pleadings that the designation was a sham or induced by fraud or undue advantage. The only claim in their pleading is the mere fact that the farm was homestead and legally exempt from a mortgage lien.

It is difficult to hold a designation of homestead ineffective, for fraud, undue advantage or as a sham, when the husband and wife are in accord in the intention of selection of a given place as their family homestead, acting freely, voluntarily, and influenced by "nobody." What would relieve the effect of the designation? The appellees insist "that the undisputed evidence shows that the deed of trust, as well as the homestead designation, was not executed in good faith, but merely so as to enable the bank to satisfy the state banking department." Necessarily, if the deed of trust and the designation were executed in pursuance of a mutual understanding of a wrongdoing or in the nature of a sham transaction, then the bank could not predicate estoppel. But the appellees do not plead such a state of facts in defense to the bank's plea of estoppel. And looking to the entire evidence, it is concluded that an issuable fact is not presented of a sham transaction or of deception practiced by the cashier of the bank on appellees or either one of them inducing the execution of the deed of trust or the homestead designation. The force and effect of the evidence is that the bank, acting through the cashier and the president, was undertaking to comply with the direction of the bank examiner to insist upon all past-due indebtedness being paid, or upon renewals being made with security for payment, and that Mr. Nichols, at first objecting to give security for his past-due note by trust deed upon his farm, finally, upon his own free will, proffered a renewal note, secured by a trust deed upon the farm, and accompanied by a formal designation of homestead in the town lot upon which he and his family were residing. The bank then, in good faith, accepted the renewal note, relying upon the designation freely and voluntarily made by Mr. Nichols and his wife. No other conclusion can be reasonably reached. The case is clearly within the case of Dodson v. Dickey (Tex. Civ. App.) 264 S. W. 586. Therefore the judgment is reversed, and judgment is here rendered in favor of the bank, foreclosing the lien upon the land in suit to the extent of the amount of the note, interest, and attorney's fees; no personal judgment to be entered against W. A. Nichols, in virtue of his discharge in bankruptcy. The cost of the trial court and of appeal to be taxed against W. A. Nichols.