**CITIZENS' STATE BANK OF LINDALE v. JEFFRIES et ux.  (No. 3490.)**

Court of Civil Appeals of Texas. Texarkana. Dec. 29, 1927.

Rehearing Denied Jan. 12, 1928.

1. Homestead 116 — Conveyance of homestead to fix lien to secure debt held void as mortgage (Const. art. 16, § 50).

Where conveyance of lots on which grantors were living was merely to fix a lien to secure a debt, and grantees knew that grantors actually occupied and used property as homestead, conveyance, being a mortgage, was void under Const. art. 16, § 50.

2. Homestead 122—Grantors were not estopped from claiming homestead in lots because they designated other homestead property, where creditor knew they lived on lots at time of attempted creation of lien.

Where homestead in lots was conveyed to fix a lien to secure a debt and creditor, and his grantee knew that original grantors were occupying the lots as a homestead, grantors were not estopped from claiming homestead therein because of having designated a homestead in other property, where such designation was a pretense, known to all parties.

3. Judgment 678(1)—Estoppel by judgment is available only against party to proceedings or those in privity.

Estoppel by judgment is available only against a party to the proceedings or those in privity with him.

4. Estoppel 68(1)—One cannot falsify a judicial act to which he is party, and from which he received benefit.

One is estopped to falsify a judicial act to which he is a party, and from which he has received a benefit.

5. Judgment 707—Judgment affecting homestead is not binding on wife when she is not party to action.

Judgment affecting a homestead is not binding on the wife when she is not a party to the action.

6. Homestead 192—Although title to homestead is in husband, wife has interest therein which she may prosecute action to protect.

In Texas, wife has interest in homestead, although title rests in husband, and she may prosecute action for protection of her interest.

**7. Judgment** ☞**693—Order of bankruptcy court, setting aside pretended homestead, held not to estop wife from claiming homestead conveyed to secure debt (Const. art. 16, § 50).**

Where conveyance by husband' and wife of homestead in lots was to secure a debt, and was effective only as a mortgage, which was void under Const. art. 16, § 50, designation of homestead in other property and order of bankruptcy court setting aside homestead in other property *held* not to estop the wife from claiming homestead in lots, where it was not claimed that she personally participated in any active fraud in relation thereto, and she was not a party to proceedings; fraud, if any, being on bankruptcy court, and not available to creditor.

**8. Homestead** ☞**124—Mortgage on homestead void at origin is not validated by subsequent selection of another homestead.**

A mortgage, void at origin because given on a homestead, is not validated by a subsequent selection of another homestead.

**9. Homestead** ☞**122 — Fraud or misconduct only at inception of mortgage estops assertion of homestead.**

It is fraud or misconduct only at inception of the mortgage on homestead that estops assertion of homestead right.

### On Rehearing.

**10. Homestead** ☞**35—It is use, and not merely declarations, that constitute land homestead.**

It is not merely declarations that constitute land homestead, but the use to which it is put.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Trespass to try title by Earl Jeffries and wife against the Citizens' State Bank of Lindale. From a judgment for plaintiffs, defendant appeals. Affirmed.

The suit is by appellees, husband and wife, in trespass to try title to lots 1, 2, 3, 4, 5, and 6 in block 5 of Highland Park addition to the town of Lindale. In effect, the petition asserts title in the property as homestead, occupied and continuously used as such, claiming a certain' deed to it to be purely a simulated transaction and void operating as a cloud on the title. The appellant answered by general denial, and specially pleaded estoppel by written and recorded homestead designation of lot 1 in block 17 in the town of Lindale, and by scheduling and claiming such lot as exempt as homestead in bankruptcy proceedings.

The facts, briefly stated, are that on February 1, 1923, C. P. O'Neal conveyed by deed to Earl and Lindsay Jeffries lots 1, 2, 3, 4, 5, and 6, in block 5. Lindsay Jeffries, as shown, had no real interest in the property. The lots were vacant and unimproved. Earl Jeffries, when he "acquired" the lots, immediately bought lumber and erected a "house" and "a double garage" thereon. He bought the lots with the view of homestead. Upon the completion of the house in 1923, Earl Jeffries and his wife at once moved into it, and from that date they continually used and occupied it as a homestead until August, 1926. In August, 1926, they, as testified, "temporarily" moved to Plainview. They did not abandon their home, and there is no claim that they did so. It appears that, for eight years previous to acquiring and moving into the home in block 5 in Highland Park addition, Earl Jeffries and his wife owned and resided on lot 1, block 17, in Lindale, using and occupying it as their homestead. When they moved away from the lot, they abandoned it as homestead, and never again used or occupied it as such. On January 21, 1924, Earl Jeffries and his wife executed an instrument in writing, duly acknowledged by them, reciting that they "do hereby set apart and designate as homestead to which the family is entitled under the Constitution and laws of this state, exempt from forced sale, lot No. one (1) in block No. seventeen (17), in the town of Lindale, Smith county, Texas."

There is evidence that the declaration of the homestead in this lot was only a pretense, and not with intention and purpose of acting on it. On the same date of this designation, January 21, 1924, D. B. Hambrick executed and delivered to Earl Jeffries three notes of $850 each, due one, two, and three years after date, respectively. These notes recited that they were given in part payment of the lots in suit. It is a disputed matter as to whether a deed was executed. Mr. Hambrick expressly stated:

"I didn't get a deed to it. I never saw a deed to it. There never was a deed executed conveying that property to me, as far as I know. I have never claimed it. I did not purchase that property from Mr. Jeffries."

The preponderance of the evidence goes to show that a deed was executed, but the delivery of it to Mr. Hambrick or the bank is not shown. It is not in the record or shown to have been registered. On the same date these notes were placed by Earl Jeffries with the appellant bank as collateral in part for a loan of $5,000. The purpose of having Mr. Hambrick execute these notes was, as claimed in appellee's evidence, "as accommodation" to enable Mr. Jeffries to obtain a loan from the bank. There is evidence that the bank knew of the purpose of Mr. Hambrick in signing the notes, and that the declaration of homestead was only a pretense, and not with the intention and purpose of acting on it. The bank denied this in toto. It was admitted on the trial that "there is no record of acknowledgment on the notary record," of "the designation of homestead," and that such designation was not recorded in the county clerk's office until March 23, 1925, the date of the bankruptcy proceedings herein set out.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It further appears that Earl Jeffries, at the time, was doing business in Lindale under the trade-name of Lindale Dry Goods Company. A fire destroyed the property, but the date is not shown. Subsequently, in March, 1925, he was adjudged bankrupt by the bankruptcy court for the eastern district of Texas. He scheduled as "real estate owned by him" "one town lot in the town of Lindale, Tex., being lot 1, block 17," and as "property claimed as exempt" "one town lot in town of Lindale, Tex., being lot 1, block 17." The lots in suit were not scheduled. He owned no other real estate. He owned no personal property subject to execution, and none was scheduled except as shown. In the statement of "creditors holding securities" appears:

"(1) Citizens' Guaranty State Bank, Lindale, Texas, $6,500.00, secured by vendor's liens signed by H. D. Johnson and D. B. Hambrick.

"(2) Mayfield Company $8,200.00, secured by mortgage on notes and accounts and fixtures."

There were no other debts except for taxes and clerk hire.

By order of the bankruptcy court, lot 1, block 17, was set aside as exempt "as used and occupied by bankrupt and his family as their homestead," and the personalty was likewise exempted. A further order was made allowing the Citizens' Guaranty State Bank a credit on its claim "of $3,300 and the security delivered to it." Inferably a similar order was made respecting the Mayfield Company's claim and securities. The bankrupt was discharged.

On June 23, 1926, after discharge of the bankrupt, D. B. Hambrick and wife conveyed the property in suit to appellant bank, reciting in the deed that it was made in satisfaction and cancellation of the notes mentioned as having been by him executed to Earl Jeffries and deposited with the bank as collateral. After discharge in bankruptcy, and on October 15, 1925, Earl Jeffries, joined by his wife, conveyed to appellant bank lot 1, block 17, in consideration of a pre-existing debt for lumber sold. The deed has the recitation, "Same being used and enjoyed by Earl and Mary Jeffries as their homestead in Lindale." Mrs. Jeffries testified:

"I didn't see that recitation in the deed. I remember signing the deed. I can't say that I remember reading just what was in it. That was not my homestead on October 15, 1925. I was living at the other place."

Mrs. Jeffries further testified:

"Lots 1, 2, 3, 4, 5, and 6, block 5, Highland Park addition, is my homestead. We lived there continuously from 1923 to the time we went to Plainview. I didn't know of any one ever signing any notes purporting to fix a lien on my homestead. I never agreed for any one to fix a lien on my homestead. I never had any knowledge or knew that other property than my homestead was designated in the bankruptcy proceedings as homestead. I did not know that lot 1, block 17, had been designated as my homestead. Lot 1, block 17, was not my homestead. * * * I did not know anything about the bankruptcy proceedings. * * * I don't remember signing any deed to Mr. Hambrick deeding my home to him."

The president of the bank testified:

"When I took those notes I knew that Mr. and Mrs. Jeffries were living on that property (in suit), and had been living there for two or three years as their homestead. They were living there at the particular time I took this collateral, and continued to live there as long as they stayed in Lindale."

The jury answered the special issues submitted to the effect that (1) Earl Jeffries and wife did execute a deed to D. B. Hambrick to the property in suit, but that it was not intended as a conveyance of the property, and only "to fix a lien to secure a debt"; and (2) the bank knew "the deed was given to secure a debt," and Mrs. Jeffries knew that lot 1, block 17, had been set aside as homestead by the court of bankruptcy, and that her husband practiced no fraud on her in having it done. These findings all have support in the evidence, and are here adopted.

Judgment was entered in favor of the plaintiffs, awarding recovery of the property. The bank appeals, claiming that judgment should have been rendered in its favor on the verdict and the evidence.

J. A. Bulloch, of Tyler, and J. A. Mallory, of Lindale, for appellant.

Lasseter & Simpson, of Tyler, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] It is believed that the trial court correctly decided the case; and the judgment will be affirmed, in view of the established facts. The conveyance of the lots in suit to D. B. Hambrick was, as found by the jury, merely in order "to fix a lien to secure a debt"; that is, to secure a loan from appellant bank. It is clear that the appellees at the time had a right of homestead and exemption as such in the property. They were actually residing thereon, using and occupying it as homestead. A mortgage upon a homestead "to secure a debt" of the kind in evidence is absolutely void. Article 16, § 50, Const. And the appellant, who was the creditor, knew, as the jury found, that the transaction was purely a mortgage in nature. D. B. Hambrick, too, knew it. D. B. Hambrick and the president of the bank admitted that they knew that the property, at the time of the loan and before, was actually occupied, used, and claimed as homestead by appellees. The bank could not ignore the notice conveyed by the actual use of the property. In such actual knowledge, the bank may not predicate validity of the mortgage by estoppel, especially upon the designation of lot 1, block 17, as homestead, of date with the mortgage, January 21, 1924. The bank would

be held to know that, in the absence of actual occupancy of lot 1, the appellees could not by mere declaration substitute the lots actually used for homestead lot No. 1 not so used. Parrish v. Hawes, 95 Tex. 192, 66 S. W. 209; Dodson v. Dickey (Tex. Civ. App.) 264 S. W. 586. The rule would be different had the appellees been actually residing upon lot 1. Merchants' & Planters' State Bank v. Nichols (Tex. Civ. App.) 275 S. W. 84.

[3-5] Further, the court was warranted in finding from the evidence, and which finding we must presume he made, that such designation or declaration of homestead was not made in real intention and purpose, but only in pretense, as all the parties knew and understood. The appellees had permanently abandoned lot 1, block 17, as their homestead some time prior thereto. The parties contemplated and understood, as the evidence goes to indicate, that the appellees were not at all intending to abandon their residence upon the lots so undertaken to be mortgaged, and their use and occupancy of the same as a home. And in the light of the evidence in behalf of appellees the bank loaned no money on the faith of such declaration, and such declaration in no wise induced the loan of the money and the taking of the mortgage. In the circumstances, the bank acquired no lien or title in the premises in virtue of the deeds to and from D. B. Hambrick. Hurt v. Cooper, 63 Tex. 362. And it is thought that, in view of the circumstances, the bank may not successfully invoke estoppel by judgment on the order of the bankruptcy court setting aside lot 1, block 17, as homestead. Estoppel by judgment is available only against a party to the proceedings, or those in privity with him. The bankrupt's claim of lot 1, block 17, as homestead, when in fact and in law it was not, eliminating it as assets of the estate, was undoubtedly, in view of the evidence, a clear imposition upon the referee, and an injustice to general creditors. It amply afforded ground for revocation of his discharge upon timely application therefor. As against him the order would legally preclude a re-examination into the truth of the matter decided. Friedsam v. Rose (Tex. Civ. App.) 271 S. W. 417 (wife not a party). The law estops a person to falsify a judicial act to which he is a party, and from which he has received a benefit. The rule rests on the broad ground of public policy. Yet Mrs. Jeffries was not a party of record to the proceedings. And a judgment affecting a homestead is not binding on the wife, when she is not a party to the action. Seay v. Fennell, 15 Tex. Civ. App. 261, 39 S. W. 181; Gates v. Pitts (Tex. Civ. App.) 291 S. W. 948; Crouch v. Holterman, 272 Mo. 432, 199 S. W. 193; King v. Wilson, 95 Kan. 390, 148 P. 752. Quoting from Jergens v. Schiele, 61 Tex. 255:

"If there [were] any defense that could have been urged growing out of her [the wife]

homestead rights which would have defeated the action, then she was a necessary defendant in the cause."

[6-8] In this state the wife has an interest in the homestead property, although the title may rest in the husband, and she has a right to prosecute an action for the protection of that interest. Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2. It is admittedly shown that the lots in suit, although not scheduled, had a homestead exemption which antedated, and existed at the time of, the bankruptcy proceedings, and continued uninterrupted to the date of the present trial. The title to property reserved by the state law as the debtor's exemption does not rest in the trustee in bankruptcy, but remains in the debtor. It is expressly excluded from the assets of the bankrupt's estate to be administered. Lockwood v. Exchange Bank, 190 U. S. 294, 23 S. Ct. 751, 47 L. Ed. 1601. The bank knew at the time of bankruptcy that there was present residence and actual occupation of the lots as homestead. There had been no abandonment of the premises as homestead, and there was, as now, actual occupation of the lots as homestead. The bank could legally acquire no valid lien or right of estoppel in virtue of the bankruptcy proceedings, 14 months after the inception of the mortgage, that the Constitution of the state would not allow. There has never been, even to the date of the trial, divestiture of the homestead character of the lots in suit. It is immaterial that the wife knew of the bankruptcy proceedings and the order, since there is no claim in the evidence that she personally participated in any active fraud in respect thereto. And considering such proceedings in the bankruptcy court in the light of an attempted renunciation by the husband of the premises in suit as exempt, still, as against the wife, such renunciation, as ground for estoppel, would not, in the circumstances, aid the bank's purported lien. A mortgage void at origin because given on a homestead is not validated by a subsequent selection of another homestead. Inge v. Cain, 65 Tex. 75; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829. As expressly held in the Inge Case, supra:

"We are of opinion that the clause quoted from the Constitution of 1876 renders all liens upon the homestead, not expressly excepted, absolutely void, and that they are not vitalized by the divestiture of the homestead character."

[9] It is fraud or misconduct only at "the inception of the mortgage" that estops the assertion of the homestead right. Quoting:

"Had the property been in use at the time of the disclaimer—had it been in fact a homestead—the disclaimer would have had no effect. It would have been only an attempted evasion of the law exempting the homestead from sale un-

der mortgage or execution for debt." Kempner v. Comer, 73 Tex. 200, 11 S. W. 196.

Affirmed.

#### On Rehearing.

The bank sets up no right or interest in or to lot 17. That lot is not involved in the controversy. The bank's claim arises in and under the purported lien on the lots in suit, and the litigation is entirely in respect to the validity of the liens. In the original opinion it was determined, namely: (1) That the bank knew of the use and occupancy of the lots in suit as homestead, and, so knowing, it was not in any wise in the attitude of an innocent holder of the purported lien notes, and therefore not entitled to a foreclosure of the lien on or a deed to the homestead; (2) that the order of the bankruptcy court setting aside as exempt lot 17 did not have the effect to work estoppel and preclude litigation in respect to the validity of the purported liens on the different lots in suit.

After a full reconsideration of the case, we adhere to the conclusion that the bank may not invoke estoppel as by judgment against Mrs. Jeffries upon the order of the bankruptcy court exempting lot 17. Mrs. Jeffries was not a party to proceedings in bankruptcy as "debtor." L. R. A. 1916D, 1233; In re Dixon, 18 F.(2d) 961. That there was imposition upon the bankruptcy court and the creditors of the estate as to lot 17, even though with knowledge of Mrs. Jeffries, would not create an incontestible right to the bank to the property in suit or to enforce the purported liens against it. There was in no wise involved in the order exempting lot 17 the determination of the validity of the purported liens against the lots in suit, and the bank derived no right under such order to the property in suit. Mrs. Jeffries can still legally deny the validity of the lien and set up against it claim of homestead to lots in suit, without having the order of the bankruptcy court set aside. As analogous, it has been held that the wife may not be conclusively estopped from claiming her separate property by reason of having inventoried it as a part of the estate of her deceased husband; she not having sold same to a person without notice of her rights. Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705; Speer on Marital Rights, § 252. And estoppel in pais, as growing out of a fraudulent purpose and a fraudulent result, as exempt lot 17 may not be made the basis of relief, because the bank did not acquire the purported lien on the lots in suit in reliance on such conduct, and it did not change its position for the worse. The bank's claim of the notes was merely approved by the bankruptcy court, and their validity became a subject-matter of litigation as occasion existed in a court of competent jurisdiction. The purported lien notes long antedated the bankruptcy proceedings.

[10] As stated in the original opinion, the attempted renunciation of the property in suit as homestead by merely listing lot 17 in its stead, although a fraud upon the bankruptcy court as to lot 17, will not aid the purported lien of the bank. It would not work estoppel for that reason. Lot 17 was not the actual homestead at the time, but the lots in suit were. It is not, as so often laid down in the cases, mere declarations that constitute land homestead, but the use to which it is put. It is undisputed that the lots in suit before, at the time of, and since, the bankruptcy, were actually occupied and used as homestead.